[No. 30082. Department Two. March 7, 1947.]

ROBERT H. MARTIN, *Respondent,* v. BEVERLY MARTIN, *Appellant.*[1]

[1]Reported in 178 P. (2d) 284.

*Chavelle & Chavelle,* for appellant.

*Lenihan & Ivers,* for respondent.

HILL, J.—By the interlocutory decree entered herein on June 25, 1946, the respondent was granted a divorce and was awarded the custody of the only child of the parties, then two years and nine months old, with the proviso

" . . . that said child . . . is hereby made a ward of the Juvenile Court under the jurisdiction of the Superior Court of the State of Washington, in and for the County of King."

This decree was predicated upon a finding that appellant was not, and that respondent was, a fit and proper person to have the custody of the minor child. There was also a finding that the respondent intended

" . . . to establish a residence in the Province of British Columbia, Canada, and if awarded the custody of the minor child of the parties, will remove said child to said residence."

From these findings, the court concluded that custody of the child should be awarded to the respondent, but that, because of his intention

" . . . to establish residence in a foreign jurisdiction said child should, by the decree herein, be made a ward of the Juvenile Court under the jurisdiction of the Superior Court of the State of Washington, in and for the County of King."

The appellant makes three contentions:

(1) The trial court erred in depriving her of the custody of the child. (2) The trial court erred in decreeing that the child be removed beyond the jurisdiction of the court. (3) The trial court erred in depriving the appellant of the privilege of visitation.

 To review the testimony in this case at any length would be a disservice both to the appellant and to the child. The finding that the appellant is not a fit and proper person to have the custody of the child is amply supported by the evidence. Before the action was commenced, her own father was of the same opinion.

We have recognized that infatuation with a man other than her husband, and even adultery if not promiscuous, does not necessarily mean that a mother should be deprived of the care and custody of a child of tender years. *Norman v. Norman, ante* p. 25, 176 P. (2d) 349. However, we have here a case in which the trial judge's statement in his oral opinion, "This young woman is wholly without character," gives an accurate summation. When confronted with a situation in which she was advised that if she made a certain trip, she would lose the custody of her child, the love which her counsel stressed so strongly in the oral argument was not strong enough to deter her from following her own inclinations and selfish desires.

The conduct and attitude of the respondent toward the appellant is not above reproach, but there is nothing in the record before us that can challenge the trial court's finding that he is a fit and proper person to have the custody of his daughter.

Appellant had much to say in her brief and in the oral argument concerning the advantages of her parents' home as a place to take care of the child. Her parents are unquestionably admirable people and their home a very desirable one. However, if she were given custody of the child, she could remove her from that home at any time, as the record shows that she has done heretofore.

Appellant labors the point that the child will be on a cattle ranch in British Columbia, and that the nearest town

will be Lone Butte, some twenty-eight miles distant. We are not prepared to say that children raised with all the advantages of a metropolitan environment are superior to those who come from the "Lone Buttes." When we see what city life has done for the appellant, we are disposed to believe that the "rugged wilds of Canada" referred to in her brief will not be entirely disadvantageous to her daughter.

The interlocutory decree contains no express permission to the respondent to remove the child from the jurisdiction of the court, but it was recognized by both parties and by the trial court that the child would be taken to British Columbia if the respondent was awarded her custody. We are, in effect, asked to modify the decree to prohibit that removal, and that we decline to do. The respondent desires to engage in the business of cattle raising, working with his father and mother on their ranch. It is a perfectly natural and laudable desire. He has the responsibility of making a living for himself and of adequately supporting and caring for the child, and his opportunities of so doing should not be unduly restricted. His mother had taken care of the child for approximately nine months prior to the trial, and, while the responsibility for the child's care is his, his mother doubtless would give the little girl more devoted care than anyone he could employ for that purpose. The best interests of the child will be served by permitting respondent to take her to the ranch in British Columbia, where she can be with him and, also, have the advantage of his mother's care and supervision.

We have, on several occasions, authorized the removal of a child from the jurisdiction of the court. *Kirby v. Kirby*, 126 Wash. 530, 219 Pac. 27; *Jeschke v. Jeschke*, 16 Wn. (2d) 617, 134 P. (2d) 464; *Goade v. Goade*, 20 Wn. (2d) 19, 145 P. (2d) 886. In *Bedolfe v. Bedolfe*, 71 Wash. 60, 127 Pac. 594, the father had been awarded the custody of a minor child. He moved to North Fork, Oregon, with the child, and the court approved the removal, although North Fork was "accessible only by traveling upon the caboose of a work train or by wagon road." In the original decree

in that case, there was no permission given to take the child out of the jurisdiction; in fact, it was argued that, since a right of visitation at all reasonable times was given to the mother, there was an implication that the child should be kept within the jurisdiction of the court that entered the decree. This court commented, "It may be susceptible of that interpretation."

It may well be that the reason the trial court made no reference to the privilege of visitation in the interlocutory decree here appealed from, was that it desired to avoid any such implication or interpretation.

■■ The restriction of visitation here complained of is not contained in the decree, but is an incident to the removal of the child to British Columbia. This was a matter to be considered in determining whether or not the respondent should take the child out of the jurisdiction. It was so weighed and considered. Appellant having by her own conduct deprived herself of the right to the custody of the child, we will not permit the easy exercise of her privilege of visitation to stand in the way of respondent's best opportunity for earning a living, and of providing adequate care for their child. The privilege of visitation of the parent is an important one, but it is not an absolute right, nor is it the paramount consideration. The interlocutory decree here appealed from is not to be construed as depriving the appellant of the privilege of visitation. *Hathaway v. Hathaway*, 23 Wn. (2d) 237, 160 P. (2d) 632. The respondent so concedes in his brief, stating on p. 21 thereof:

"She has the right to see and visit the child. Such right might be curtailed or impracticable of exercise, in view of the distance which would apparently separate them. But still the right is not denied."

■ If respondent in any way interferes with appellant's legitimate exercise of her privilege of visitation, wherever the child may be, appellant is not without her remedy. In the *Bedolfe* case, *supra,* the mother apparently had made the difficult trip to North Fork, Oregon, to see

her daughter, and had been greeted with insults and treated with incivility, and this court said:

"If he or any member of his household in the future treats her with such incivility, when she is visiting her daughter, as to deter her from continuing her visits, she may again apply to the court of first instance for a modification of the decree, or for a rule on the respondent to show cause why he should not be punished as for a contempt."

In conclusion, we desire to assert again what we have said previously in *Goade v. Goade, supra:*

"The court cannot, either in the original interlocutory decree or in orders modifying it, divest itself of the power conferred by the statute to entertain an application concerning the custody and control of minor children. Of course, where the order permits the child to be taken from the state, the power may be without avail, but it is not lost. It becomes effective upon the child's return to the state. This was recognized in *Jeschke v. Jeschke, supra.* In that case, the order permitting removal of the child from the state reserved the father's right of visitation in the event of its return.

"What we have said here with respect to this continuing power of the court over the disposition, custody, and control of minor children in divorce actions, has been said, in substance, many times in our decisions. Reiteration has seemed to us necessary, however, lest it be contended in a foreign jurisdiction that the order under review serves to deprive appellant of all paternal rights with respect to the child. The order is not to be construed as depriving him of the right of visitation."

The fact that the interlocutory decree made the child a ward of the juvenile court was unquestionably for the purpose of emphasizing, in any foreign jurisdiction, that we claim a continuing jurisdiction for the appropriate court, over the custody and control of this minor child. No error is assigned or argued concerning this portion of the interlocutory decree.

The interlocutory decree appealed from is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.