[No. 33382. Department One. January 26, 1956.]

DONALD NEDROW, *Respondent*, v. BETTY LOU NEDROW, *Appellant*.[1]

[1]Reported in 292 P. (2d) 872.

*O'Leary, Meyer & O'Leary,* for appellant.

*Lynch & Lynch,* for respondent.

FINLEY, J.—This case involves a post-divorce controversy respecting child custody. The parties were married at Olympia, Washington, on June 20, 1950. On September 23, 1953, Donald Nedrow was awarded a divorce from Betty Lou Nedrow because of alleged misconduct on her part while he was away from home in the Army. Despite the alleged misconduct, the trial court found that Betty Lou Nedrow was a fit and proper person and placed in her custody the two-year old daughter of the parties, Donna Jean. The father was permitted "the right of visitation with and the right to be visited by said minor child at all reasonable times and places . . . including the right . . . to have the custody of said child for one month during the summer . . . ," and for the three summer vacation months when the child reaches school age. The decree did not prohibit the mother from removing the child from the state of Washington.

In the divorce proceedings, Donald Nedrow disclaimed paternity of a second child born to Betty Lou Nedrow while he was in the armed services. Subsequently, on June 5, 1954, Betty Lou married Norman Ossman; on October 2, 1954, Donald Nedrow also remarried.

On October 7, 1954, Donald Nedrow filed a petition, alleging that his former wife was not a fit and proper person to have the custody of their minor daughter, Donna Jean; that Donna Jean was being neglected and was not being taken care of properly by her mother. The petitioner requested that custody of Donna Jean be transferred to him. After a hearing on the petition, the trial court made a finding as follows:

". . . *the mother of said minor child of the parties, is a fit and proper person to have the care, custody and control of said minor;* . . . that the minor child of the parties since the marriage of the defendant and her present

husband has made her home with the defendant and her present husband. *The court finds that said minor child at all times since the divorce of the parties hereto has had good care; that defendant's husband is willing and anxious that said minor child be allowed to remain with defendant and him and is willing to care for her."* (Italics ours.)

The petition for a transfer of custody was denied.

The record before us shows the following: That Norman Ossman, the present husband of Betty Lou, was discharged from the United States Army on April 15, 1955; that he is twenty-three years of age, a high school graduate, and that, before entering the Army, he was employed for three years as a fire insurance adjuster by the Underwriters Salvage Company of Chicago, Illinois; that, after his discharge from the Army, his former employer offered him his old job in Chicago at a salary of four hundred dollars per month; that the Ossmans planned to go to Chicago to enable the husband to accept the offer of employment; that they planned to take Donna Jean with them and to live with Norman's mother, who, with her minor son, lives in a three-bedroom home which she owns in a suburb of Chicago; that, in contemplation of the move to Chicago, the Ossmans' belongings and household goods were shipped to Chicago by the Army.

At this juncture in the plans of the Ossmans, Donald Nedrow petitioned the trial court, on April 6, 1955, for an order prohibiting his former wife from removing Donna Jean from Olympia, Washington. An affidavit was filed against the trial judge who had heard both the divorce case and the first petition for custody modification, mentioned above. Consequently, a different trial judge heard the petition for an order prohibiting the removal of Donna Jean from the state of Washington. After the hearing, he entered the following finding of fact:

"The court finds that since entry of the decree of divorce in this cause plaintiff has exercised his right of visitation with his child on frequent occasions, and that his visits with his child show genuine interest in said child; that the testimony further shows the said minor child is extremely fond of plaintiff and looks forward to visitation with him; that the testimony and record show that the welfare of said

minor child will best be served by insuring plaintiff's right of visitation with his child and by insuring the child's opportunity of visitation with the plaintiff; that in the event defendant were allowed to remove the minor child from the state of Washington the legal effectiveness of any further order of this court in this matter would be seriously impaired."

The above so-called finding and the remarks of the trial judge in the record indicate that for two reasons he was genuinely concerned over the Ossman's proposal to move the minor child to Chicago: (1) He reasoned that a move to Chicago would place the minor child beyond the jurisdiction of the trial court and, from the standpoint of practicable considerations, would militate against supervision of her custody by the courts of the state of Washington; and (2) he reasoned that the move to Chicago would deprive both the father and the minor child of the opportunity of visitation with each other, which, he concluded, would not serve the best interests and welfare of the child. An order was entered prohibiting the removal of Donna Jean from the state of Washington.

In this appeal from the latter-mentioned order, error is assigned to the above-quoted finding of fact, to the conclusions of the trial judge based thereon, and to the entry of the order prohibiting removal of the minor child from the state of Washington.

We have said on numerous occasions that questions relative to the custody of minor children and questions regarding the frequently conflicting interests of divorced parents in such matters are perplexing; and that it is extremely difficult, if not impossible, to accede to the desires of all concerned. Some inconvenience, some disappointment, and even some heartbreak and sorrow, is almost inevitable. The present case is no exception. In most such cases, custody must be given to either one parent or the other, and there is simply no possible way for the courts to recognize and to give support to all of the often conflicting custodial or visitation claims of divorced parents.

In the case at bar, originally, the divorce court definitely

found that the mother was a proper person to have custody; and consequently, the custody of the minor child was awarded to her. Thereafter, the father attempted to show that the child was being neglected and that the mother was unfit to have custody. Once again, the trial court found that the mother was a proper person to have custody, that the child was not being neglected, and that the mother was providing proper care for her minor daughter. Later, further complications arose because of the offer to Norman Ossman of employment in Chicago and his understandable desire to accept the offer and to move his new family to Chicago.

We are most sympathetic with the trial judge and his efforts to find some solution for the apparently irreconcilable conflict of interests involved in this case. However, after reviewing the record carefully, and after careful analysis of his reasons for prohibiting the removal of the minor child from the state of Washington, we reluctantly must disagree with the trial judge as to his attempted solution of the problem involved.

In the first place, although removal of the minor child from this state may present certain problems in connection with the enforcement of any subsequent orders by the trial court regarding her welfare and custody, nevertheless, we have said in a number of decisions, and it has been pointed out in numerous cases from other jurisdictions, that a court originally having cognizance of a custody matter has a continuing jurisdiction to supervise custody. This continuing jurisdiction is generally recognized by the courts of other states, and these have concurrent jurisdiction to supervise matters of custody and welfare by reason of the physical presence of minors within such states. 154 A. L. R. 552, 559; *Martin v. Martin,* 27 Wn. (2d) 308, 178 P. (2d) 284; *Lane v. Lane,* 1945 (Mo. App.), 186 S. W. (2d) 47; *Coats v. Coats,* 161 Kan. 307, 167 P. (2d) 290. See, also, *Butler v. Butler,* 83 N. H. 413, 143 Atl. 471, wherein the supreme court of New Hampshire said:

"The hazards of ineffective enforcement arising from the mere change of a ward's residence to another state are not

such as to prevent the court from giving the fullest force and consideration to the child's greatest welfare which, as we have seen, is always the paramount and determining factor. . . . While jurisdiction to modify an order for custody, as a legal consequence, continues in the court of the state where it is made . . . , nevertheless, upon proof that the custodian of a child is unfit to continue to have the control of the child, the child may be taken from him and be given to another person by the courts of any state into which the child may have come. . . .

"*With the fuller and more complete application of the principles of comity prevailing in these matters . . . , there is neither justification nor occasion for the court of one state assuming to itself a superiority of supervisory capacity in dealing with state wards.* The courts of the state of the current situs of the child are ordinarily in a position to exercise their jurisdiction more beneficially and more effectively than those of any other state . . . , and may be safely trusted to safeguard the welfare of the child if changed circumstances have made a new or modified order necessary." (Italics ours.)

The finding of the trial court, quoted above, is a mixture of facts and conclusions of law. The first portion of it indicates that the father of the minor child has frequently exercised his right of visitation; that his visits show a genuine interest in his child, and that the child is extremely fond of her father and looks forward to visitation with him. These facts found by the trial court indicate the usual and very understandable situation where parents and children retain an interest and affection for each other, despite the fact that a marriage has gone on the rocks and one or the other, or both, of the senior members of a martial community have decided upon the desirability of, and have procured, a decree of divorce.

It certainly can be said that the exercise of properly circumstanced visitation privileges may be of positive or meritorious value to a noncustodial parent, and, furthermore, to a child or children concerned. Nevertheless, circumstances can and do arise when the exercise of visitation privileges is not consistent or congenial to other more important considerations bearing upon the best interests and the welfare of a minor child or children.

In the instant case, there is no showing that the values attributable to visitation between the father and the minor child are of a more unusual nature, or of a kind that is more particularly important or vital to the welfare of the child, than is usual in such cases. The facts, as found by the trial court in the present case, do not, without more, justify the trial court's conclusion "that the welfare of the minor child will best be served by insuring plaintiff's right of visitation with his child and by insuring the child's opportunity of visitation with the plaintiff." This seems to us to be particularly true when the facts found by the trial court are balanced against considerations of the minor child's welfare in terms of employment possibilities of Norman Ossman in the city of Chicago, the necessity of his earning a good income to provide a good living for his family (including the minor child, Donna Jean), his willingness to undertake the responsibility of providing the necessities of life, and of otherwise providing adequate care for the minor child.

In some respects, the matter of providing a livelihood for a family today may be somewhat different and more complicated than it was even a few years ago. People—particularly younger ones—move about in search of opportunities for advancement, and for providing a better living for themselves and their dependents. Corporations and other large employers frequently transfer personnel for a variety of reasons. Modern communication and transportation facilities encourage and permit the foregoing things. The courts must and do recognize these realities.

Nowhere in the record do we find a showing of any ulterior purpose in the plan of the Ossmans to take Donna Jean to Chicago. Annoyance, spite, hurt or harm to Donald Nedrow, the noncustodial parent, is not suggested. On the contrary, the Ossman's move to Chicago seems to be for the *bona fide* purpose of enabling Mr. Ossman to accept a job, which appears to be a good one, financially, for a man of his age, education and experience. Regular employment at good pay by the new husband of Betty Lou, the custodial parent, and his willingness to assume responsibility for Donna Jean, is to us a most significant consideration in terms

of the welfare and the best interests of the minor child. We have in mind once again the fact that the divorce decree, in the first instance, awarded custody of the minor daughter to the mother. In this, unquestionably, the major responsibility for the care and welfare of the child was placed upon the mother. Subsequently, when the father attempted to acquire custody, it was again judicially determined that the mother had met her responsibility of providing proper care. Custody of the child was left in her hands.

■ Admittedly, the facts are usually different in different cases. With this in mind, however, we note that in the following cases, *Bedolfe v. Bedolfe,* 71 Wash. 60, 127 Pac. 594; *Kirby v. Kirby,* 126 Wash. 530, 219 Pac. 27; *Jeschke v. Jeschke,* 16 Wn. (2d) 617, 134 P. (2d) 464; and *Goade v. Goade,* 20 Wn. (2d) 19, 145 P. (2d) 886; and *Martin v. Martin, supra,* the court did not hesitate to permit a custodial parent to remove minor children from this state to another jurisdiction when, considering the circumstances involved, the best judgment of the court indicated that the best interests of the children would be served by permitting removal to another jurisdiction. In the *Kirby* case, *supra,* the court said:

"In cases of this kind, the matter of first importance is the welfare of the child. If the stepfather can improve his business connections and associations, he treating the child as though it were his own, a better business connection cannot help but have a resultant beneficial effect in so far as the child is concerned. The respondent has not remarried since the decree of divorce, but maintains a home with his two sisters, young women, both of whom are employed a greater portion of the time. If the decree is not modified permitting the child to be taken to New York, it would result either in Mr. McCluskie's remaining in Seattle when better business connections would dictate his going to New York, or that he would be required to maintain his family in the state of Washington while he resided in New York. This would be in effect breaking up the family which undoubtedly, as shown by the evidence, is a happy and congenial one. Courts have not hesitated to permit a parent to whom a child has been awarded in a divorce action, to take it to another state, or even to a foreign country, when the best interests of the child would be promoted thereby. *In re*

*Krauthoff,* 191 Mo. App. 149, 177 S. W. 1112; *Tatum v. Davis,* 144 Mo. App. 125, 128 S. W. 766; *Stetson v. Stetson,* 80 Me. 483, 15 Atl. 60."

Numerous decisions from other states permit removal when circumstances show the best interests and welfare of children will be served thereby. *Coats v. Coats, supra; Wilmot v. Wilmot,* 223 La. 221, 65 So. (2d) 321; *Conrad v. Conrad,* 1927 (Mo. App.), 296 S. W. 196; *Lane v. Lane, supra; Lambeth v. Lambeth,* 305 Ky. 189, 202 S. W. (2d) 436.

During the argument here, counsel for the parties advised us that, after the hearing in the trial court, the parties agreed that Donna Jean would be placed in the custody of her father, Donald Nedrow, and his wife, pending the outcome of an appeal. Apparently, this was done so that Mrs. Ossman and the two other children could go with Mr. Ossman to Chicago without violating the order prohibiting Donna Jean's removal from the state of Washington. Ostensibly, Mr. Ossman is now employed there, and that part of the family is in Chicago, while Donna Jean is still in Olympia.

We certainly do not think that Mrs. Ossman should be censured for this development. She has a husband, and a child by that husband. She is under a duty to go with him where he can earn a living for his family. But as a practical result of the order of the trial court, there has been in effect a change in the custody of Donna Jean when, apparently, no change was intended by the court or was in fact justified. We think this is wrong.

Under the facts in the instant case, and considering the circumstances which these facts seem to present to us, we reach a different conclusion from that of the trial court. It is our best judgment that the case should be remanded to the trial court with directions to modify the order so as to permit the removal of the minor child from this jurisdiction. It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

February 29, 1956. Petition for rehearing denied.