[No. 34407-2-I. Division One.   May 30, 1995.]

*In re the Marriage of* ELIZABETH SHELEY, *Appellant, and* CLARK NICHOLS, *Respondent.*

*Catherine Wright Smith* and *Edwards, Sieh, Hathaway, Smith & Goodfriend*, for appellant.

*Rita L. Bender*, for respondent.

KENNEDY, A.C.J. — Elizabeth Sheley challenges the residential restriction contained in the trial court's parenting plan, which designates Sheley as the primary residential parent of the parties' two children only "so long as [she] resides in the Seattle/Mercer Island/East side area of Washington[.]" Clerk's Papers, at 28. Sheley contends that the trial court exceeded its statutory and constitutional authority in imposing this restriction, and that the order acts as an improper self-executing modification because it transfers residential care of the children to their father Clark Nichols in the event that Sheley moves to Texas.

We conclude that the Legislature's broad grant of authority to the trial courts to devise parenting plans which will promote the best interests of the child includes the authority to restrict a parent from relocating the child. Because the right to travel and to choose where one will live and work is embodied among those liberties found in the United States Constitution, however, the trial court's statutory authority is tempered. Restrictions such as those contained in the Sheley-Nichols parenting plan may not be imposed absent a showing of specific detriment to the

child if the child is relocated. Even then, the detriment to the child must be balanced against the social, professional, economic and psychological advantages of the move to the parent desiring to relocate with the child. Primary residential care may be conditioned upon a parent remaining in a particular locale only if the detriment to the child outweighs the advantages of the move and only if the best interests of the child would be better served by remaining in the geographical locale in the primary residential care of the other parent, than by relocating with the parent who would otherwise be designated the primary residential parent. Because this standard was met in the instant matter, we affirm the residential restriction. We reject Sheley's theory that the plan is otherwise invalidated as a self-executing modification.

## FACTS

The facts are undisputed.[1] Sheley and Nichols met while attending law school at the University of Texas. After graduating in June 1978, they moved to Seattle. In 1979, Sheley moved back to Texas to be a judicial clerk for a federal district judge and Nichols moved to Anchorage, Alaska, as a Perkins Coie associate. In 1980, the parties were married in Dallas and moved immediately to Anchorage.

Sheley has family ties in Texas. Before the marriage, Nichols told Sheley that he did not plan to live in Texas. The couple moved to Alaska with the expectation that Nichols would build a successful practice there and become a partner at the Alaska office of the Perkins Coie firm. This had come to pass by 1983.

Sheley became employed as an assistant attorney general in Anchorage, working first in the civil department and later as a criminal prosecutor.

---

[1]Sheley assigns error to the findings of fact only to the extent that they embody conclusions of law based on what she believes to be an erroneous standard for determining the best interests of the child. From a purely factual standpoint, the trial court's findings of fact are verities in this appeal.

The parties had two children, D., born in 1984, and J., born in 1987. Both parents continued with their careers after the birth of the children. The children were cared for in daycare and by nannies during their parents' working hours and were parented equally by each parent during nonworking hours.

Although Nichols planned to remain in Alaska until his retirement, Sheley was never happy there and continually expressed her desire to leave. These differing desires caused a good deal of tension. Finally, the couple agreed to move to Seattle. They selected Mercer Island because of the quality of its elementary schools. Sheley and the children moved to Seattle in August 1990. Nichols spent the next two years commuting between Anchorage and Seattle as he accomplished the transition of his practice. He worked 12- and 13-hour days while in Alaska so as to be able to spend significant time with the children while in Seattle. Over the two-year transition period, Nichols was able to spend 388 days with the family in Seattle.

Sheley, who is licensed as an attorney in Texas, Alaska and Washington, elected to remain at home with the children after returning to Seattle. Shortly after Nichols returned permanently to Seattle in November 1992, Sheley commenced this action for marital dissolution.

The parties reached a settlement as to the distribution of their property. Sheley wished to return to Texas with the children. She received a $50,000 per year job offer there. Her desire to relocate with the children became a point of contention between Nichols and Sheley.

The issues of relocation, child support and spousal maintenance were tried to the court in December 1993. The court heard testimony from court-appointed parenting evaluator Dr. Hutchins-Cook, who described the negative impact the move from Anchorage to Mercer Island had had on the children, and who recommended to the court that, because of the children's needs for stability, friendships, therapy, schooling and frequent contact with both parents, the children should not be moved from their im-

mediate geographical area. She advised the court that, for these children, the "loss" of either parent by virtue of that parent's move would be less of an "extraordinary stressor" than for the children to relocate once again.

After hearing all of the evidence, the trial court entered painstakingly detailed findings of fact. The court found each of the parents to be equally qualified to assume the primary parenting role. The children's relationships with each parent are equally close. The children receive a great deal of nurturing and support from each parent. Particularly as to the child D., who has special emotional needs, the parent-child relationship with each parent is complementary. D.'s relationship with his father is warm, comfortable and less intense than his relationship with his mother. It is the mother who forces D. to work on issues he is facing in counseling; accordingly, his relationship with his mother is harder, although equally important to his future development. The relationship with his father offers a relief valve. "[D.]'s emotional needs are especially well-served by a close, strong relationship with each parent." Finding 2.33, Clerk's Papers, at 55.

The children had never lived in Texas and neither wished to move there. They had no preference as to their primary residential care, so long as both parents remained in the Seattle/Mercer Island/East side locale. Each child had been able to develop friendships in his and her school and community which were especially important, in view of the difficulty each child had had adjusting to the move from Alaska. Each child was involved with a counselor and was making progress in the therapeutic relationship. Both parents supported counseling for the children.

Nichols assured the court that he would remain in the immediate Seattle area. Sheley indicated that she would remain if the trial court ordered her to do so and if the ruling were upheld on appeal. She was undecided as to where in Texas she might make her permanent home, and was unwilling to commit to the first place selected. Her desire to return to Texas was not to spite Nichols.

The trial court felt that the heritage which the children share with their mother in Texas is not the significant benefit to the children that Sheley perceives and not as significant as the statutory factors which the court was required to consider. The family in Texas is scattered and some family members have disabilities which would make it inappropriate for them to spend time alone with the children.

> There is only one factor which favors one parent over the other in the designation of primary residential parent, and that is that the mother has been the primary residential parent since the 1990 move of the family from Alaska to Mercer Island. The father agreed that if the children remain in the Seattle/Mercer Island/ East[ ]side area, [Sheley should] be designated as the primary parent, and the Court considers that as well.

Finding 2.43, Clerk's Papers, at 56.

The court reviewed the parties' property settlement agreement, heard expert testimony with respect to the cost of comparable housing in the Seattle area and in Texas, reviewed Sheley's professional qualifications, which are outstanding, and her potential for employment and the generation of professional income in Texas and Washington. The court found that Sheley could obtain employment in the Seattle area which would provide comparable pay to the job offer in Texas, and that she had the financial ability to purchase a home in the Seattle area which would provide a comparable lifestyle to that enjoyed by the parties during marriage. The court awarded Sheley spousal maintenance for one year, and a potential award for three years after that, in the event her earning capacity in the Seattle area did not reach the court's expectations within that period of time.

The court found that the children's best interests will be served by providing them with long-term stability and finality through entry of a permanent parenting plan which assures their continued residential care in the Seattle/Mercer Island/East side area "with the mother as pri-

mary parent, if she elects to remain, or with the father in the event that she moves from the geographical area so defined, provided the father has not moved from said geographical area." Finding 2.73, Clerk's Papers, at 60.

> The father is an equally qualified primary parent and available to parent the children if the mother were to move beyond the boundaries established, therefore making it reasonable that the mother shall be the primary residential parent only so long as she remains in the Seattle/Mercer Island East side area . . . .

Finding 2.72, Clerk's Papers, at 60.

Accordingly, the court designated Sheley as the primary residential parent "so long as [she] resides in the Seattle/Mercer Island/East side area . . . however, in the event that she were to move from this . . . area, the children shall remain with their father as the primary residential parent in the [same geographical area] . . .". Conclusion of law 3.19, Clerk's Papers, at 64. The trial court entered a parenting plan consistent with this conclusion. Sheley now appeals the residential restriction contained in the parenting plan.

## DISCUSSION

Sheley first contends that the trial court exceeded its statutory authority when it restricted her from removing the children from their present geographical locale. She contends that the trial court must establish who should be the primary residential parent without regard to where that parent desires to reside and then fashion a parenting plan which will take any pending relocation into consideration. She also contends that if the Legislature had intended to authorize the trial courts to restrict relocation of children or to condition residential placement upon the children remaining in a particular locale, the Legislature would have provided for this expressly.[2] She contends that

---

[2]Sheley also contended in her brief for this appeal that even if the trial court did have authority to prevent her from moving to Texas, the Seattle/Mercer

the trial court effectively awarded the residential care of these children to Seattle/Mercer Island/East side, instead of to one of the parents, in violation of the policies of the parenting act, and that if a trial court can order the parents to remain in the same geographical area to avoid disrupting the children, it can just as easily order them to live across the street from one another.

■■ We disagree with Sheley's narrow construction of the court's statutory authority, as well as her colorful characterizations of who was awarded the residential care of these children and the degree of proximity of parental residences which a court necessarily could order. RCW 26.09.002 expresses the broad policies of the parenting act:

> Parents have the responsibility to make decisions and perform other parental functions necessary for the care and growth of their minor children. In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as

Island/East side area is much too restrictive. In the oral ruling, the trial court suggested that the parties attempt to reach agreement as to the specific geographical definition of the Seattle/East side area, and stated that if the parties could not agree, the court would clarify the ruling. Thereafter, Nichols submitted a proposed plan defining the boundaries as "east of Lake Washington, north through Kirland and south through Bellevue, and east to Redmond on the west of Lake Sammamish, the City of Seattle proper and Mercer Island." Clerk's Papers, at 28. The court entered a plan containing this definition. The record on appeal is silent as to any objection Sheley may have raised with respect to this definition and as to any proposed alternative definition she may have provided to the trial court. Accordingly, we cannot verify that this contention has even been preserved for appeal, let alone that the trial court abused its discretion in adopting this particular definition. In the absence of any record that the trial court was requested to expand the proposed boundaries of the Seattle/Mercer Island/East side area and refused to do so, we decline to reach the issue.

required to protect the child from physical, mental, or emotional harm.

RCW 26.09.002. *See also* RCW 26.09.184(1)(g), which provides that one of the objectives of the permanent parenting plan is to "protect the best interests of the child consistent with RCW 26.09.002." In the appropriate, fact specific case, we hold that it is within the statutory authority of a trial court to restrict a residential parent from relocating the child outside the child's familiar geographical area and to condition the award of residential care upon that parent remaining in such geographical area with the child. The more pressing issue is whether this is an appropriate case and how the best interests of the child can be reconciled with a parent's conflicting constitutional right to travel, live and work in the place he or she finds most desirable.

The United States Supreme Court has inferred a right to travel from various constitutional provisions. " 'Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law.' " *In re Marriage of Fingert*, 221 Cal. App. 3d 1575, 1581, 271 Cal. Rptr. 389 (1990) (citing *Shapiro v. Thompson*, 394 U.S. 618, 629, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969) (quoting *In re White*, 97 Cal. App. 3d 141, 148, 158 Cal. Rptr. 562 (1979))).

Sheley also points out that residency restrictions on the primary residential parent overwhelmingly impact women, in that some 90 percent of single parents are women and 75 percent of single mothers move within four years of a divorce—and over half that number will move again, citing Anne L. Spitzer, *Moving and Storage of Post-divorce Children: Relocation, The Constitution and The Courts*, Ariz. State L. J. 1, 3 (1985). Sheley argues that no court would be likely to impose restrictions on the right of the noncustodial parent to travel where he or she may wish, and that the same should hold true for the custodial parent, regardless of gender.

Moreover, Sheley argues, "[t]he family unity which is

lost as a consequence of the divorce is lost irrevocably, and there is no point in judicial insistence on maintaining a wholly unrealistic simulation of unity." *Helentjaris v. Sudano*, 194 N.J. Super. 220, 229, 476 A.2d 828, 832 (1984). The whole point of divorce is to allow each party to go his or her own way. Because change is always disruptive, and because any relocation brings change, Sheley argues that a decision in favor of Nichols in this case will cause trial courts *never* to approve the proposed relocation of a divorcing or divorced parent. "The unknowns in the new location will always be perceived as a detriment that the stability of the status quo will always outweigh." Br. of Sheley, at 33-34.

Although Sheley correctly identifies the underlying constitutional issue, and although restrictions upon the removal of children are likely to adversely impact women who wish to relocate with their children (to the corresponding benefit of men who desire to remain in close geographical contact with their children following divorce), these concerns do not dictate that the best interests of children must always give way to the desires of the primary residential parent. Instead, as the trial court recognized here, and as held by the Montana court in *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280 (1986), requests for travel restrictions upon custodial parents require the courts to engage in "delicate balancing", on the one side of the best interests of the child, and on the other side the custodial parent's fundamental right to travel, which right is "qualified by the special obligations of custody, the state's interest in protecting the best interests of the child and the competing interests of the noncustodial parent." The *Cole* court held that the parent requesting the travel restriction must provide sufficient proof that a restriction is, in fact, in the. best interests of the child. *Cole*, at 213-24.

We agree with this allocation of the burden of proof, but we go one step further: the nonresidential parent who wishes the court to restrict the residential parent's right

to relocate with the child has the burden of proving more than simply that the restriction will serve the best interests of the child. He or she must also prove that the proposed relocation would be detrimental to the child in some specific way that is not inherent in the geographical distance between the parents if the move is approved. As Sheley points out, all change is disruptive, and a simple balancing of the status quo against the unknowns of the new location, particularly in light of the disruption already attendant to the separation and divorce, is likely to result in the undue sacrifice of the constitutional right to travel, often to the detriment of women, many of whom are financially devastated by divorce and, more often than men, in need of the opportunity to make a new economic start.

We differ with Sheley's perception that Nichols failed to meet that higher burden in this case. Not only had both children reacted adversely to the move from Anchorage to Seattle, but no sooner had they begun to settle into their new community and schools and to develop important friendships when they were hit with the reality of the separation and impending divorce of their equally beloved parents. The child D., in particular, had emotional needs that could best be served by continuing in the therapeutic relationship with his familiar counselor and by the warm, comfortable relationship with his father which served as a relief valve from the equally important but much more intense relationship with his mother. The trial court found that the parents' differing parenting styles were complementary, which was of particular benefit to D., and that neither child's need for frequent close contact with both nurturing, loving parents could be served by the kind of residential schedule which would be necessary in the event the mother moved to Texas with the children. In fact, the court found on substantial evidence that the father and mother were equally qualified to be primary residential parent, equally bonded with the children, equally loving and nurturing and that it would be reasonable for the mother to serve as primary residential parent only if she

remains in the Seattle/Mercer Island/East side area; otherwise, the father would be the better choice to serve as primary residential parent. Findings of fact 2.72, 2.73, Clerk's Papers, at 60. These particular findings are well supported by the testimony of Dr. Hutchins-Cook, that it would be far more stressful for the children to remove them from their current residential area, than for one parent or the other to move far away, leaving the children with the remaining parent.

These findings are tantamount to a finding of specific detriment, i.e., harm to the children resulting from the proposed move that goes beyond that inherent in most cases of geographical distance between divorced parents. The specific findings with respect the special needs of the child D., standing alone, are sufficient to meet this standard, in light of the fact that either parent was as equally capable, loving, supportive and closely bonded with the children as the other, and in light of the trial court's careful analysis of the social, professional and economic benefits and opportunities available to Sheley in Washington as well as in Texas.

Under all of these circumstances, we conclude that the trial court engaged in and successfully completed the "delicate balancing" called for by the constitutional tempering of the court's statutory authority to place residential restrictions upon the grant of residential care of the children to one of the parents.

Sheley also argues that this parenting plan operates improperly as a self-executing modification order: if Sheley moves to Texas, residential care automatically reverts to Nichols without a showing of substantial change and detriment to the child as required by RCW 26.09.260(1). We disagree that this is necessarily improper. RCW 26.09.184(1)(c) directs the court to fashion a parenting plan that will provide for the child's changing needs and minimize the need for future modifications. Given Sheley's strong desire to return to her roots in Texas, it was well within the court's statutory authority to provide for a

residential schedule that would take effect, absent an intervening modification of the plan, in the event Sheley were to return to Texas in the foreseeable future.

Because the trial court entered a permanent parenting plan at the time of entry of a decree of dissolution of marriage, we are not called upon to analyze the standards for modification of residential restrictions such as those contained in this plan, in light of RCW 26.09.260, tempered as that statute must be by the constitutional right to travel. Those interesting issues of perhaps conflicting statutory and constitutional law must await another day.

Affirmed.

COLEMAN and AGID, JJ., concur.

After modification, further reconsideration denied July 28, 1995.

Review denied at 128 Wn. 2d 1009 (1996).