# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 73892-5-I |
| | ) | |
| JOHN WILKINS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANDREA WILKINS, | ) | UNPUBLISHED OPINION |
| n/k/a ANDREA BARCLOW, | ) | |
| | ) | FILED: June 6, 2016 |
| Appellant. | ) | |

VERELLEN, C.J. — Andrea Barclow appeals a final parenting plan designating John Wilkins as their daughter Rebeccah's primary residential parent and restricting contact between Rebeccah and Barclow's son, Domanic. We affirm.

## FACTS

John and Andrea married in March, 2011 and separated in August 2012. They are the biological parents of Rebeccah, who was six at the time of trial. John has four other children from other relationships. Andrea has a son, Domanic, by a different father.

In August, 2014, John filed a petition for dissolution. At trial, the evidence primarily addressed the parenting plan, Rebeccah's placement, and Domanic's risk to Rebeccah. Shirley Bradford, Domanic's grandmother, testified that when he came to live with her in 2010, "[h]e couldn't control his anger" and purposely hurt her pets.[1] After 14 months of

---

[1] Report of Proceedings (July 13, 2015) at 55.

therapy, Domanic was "doing great."[2] Bradford testified that Domanic's psychologist said "unless something major happened, [Domanic] would probably grow just fine and have a good emotional outlook on life."[3] Bradford had no concerns about Domanic and Rebeccah living together.

Guardian ad litem Linda Barton testified that she learned that Domanic had anger issues and was in therapy. She did not, however, "get a clear picture as to whether that was continuing."[4] Barton testified that she had never heard of Domanic engaging in inappropriate sexual conduct, but later said she had heard that Domanic touched a stepsister inappropriately at age four and that he was cruel to animals when he first went to live with his grandmother. Barton concluded that she "just didn't have enough information to say he is a threat to [Rebeccah]."[5] Despite some concerns about Domanic, she recommended that Rebeccah live with Andrea during the school year.

The court then questioned Barton about the following portion of her written report:

> Domanic's therapist says that Domanic was not physically or sexually abused but that he was exposed to sex in an abusive way. He acted out sexually with other boys on the school bus, and he has anger issues. He has purposely hurt dogs. He has a severe separation disorder, which he will have the rest his life.[6]

The court asked if Barton learned this directly from Domanic's therapist or someone else. Barton said she learned it from Domanic's grandmother.

During closing arguments, the court posed the following question to counsel:

---

[2] Id. at 56.

[3] Id.

[4] Id. at 88.

[5] Id. at 91.

[6] Clerk's Papers (CP) at 26.

2

What should I make of the situation with Domanic? The evidence that I have is somewhat vague about if he's going to return, when he's going to return. Obviously, he's had some troubles. He's a young boy. I don't hang that fault on him. I'm not assigning fault in regard to these issues that he's had. *But clearly, Ms. Barton's report indicates some concern both by her and others about potential harm to Rebeccah. So in looking at where Rebeccah spends the majority of her time, we have at least that issue, if you will, in regard to the mother's home, and I don't have any evidence of a similar sort of issue in the father's home. What should I make of that?*[7]

Andrea's counsel responded that the guardian ad litem concluded "the potential risk of Domanic reentering was not sufficient to warrant uprooting Rebeccah from her entire life that she has here."[8] Her counsel did not, however, argue that the report's references to Domanic's troubled past was hearsay or unreliable.

The court concluded that John should be Rebeccah's primary residential parent. The court also determined that Rebeccah's "unsupervised contact with Domanic Barclow poses a risk that is adverse to the best interests of the child."[9] Accordingly, the court imposed the restriction that "[t]he child shall not be present with Domanic Barclow unless (1) an adult is present in the same room or (2) if outdoors, an adult is present within 30 feet of both children."[10] The court entered the following pertinent findings of fact and conclusions of law:

As a juvenile, the father was convicted of a crime related to abuse of a child. But that was over two decades ago and neither the mother nor the guardian ad litem (GAL) believe that the father should be restricted under RCW 26.09 .191. Moreover, the Court finds that the father's conduct did not have an impact on the child in this case, Rebeccah.

The parents live in different states. At trial each parent asked for essentially the same custody arrangement: for the child to reside with the

---

[7] RP (July 13, 2015) 119 (emphasis added).

[8] Id. at 121.

[9] CP at 49.

[10] Id. at 51.

requesting parent during the school year and with the other parent for most of summer and other school breaks. The GAL testified that if the parents lived in the same state, she would likely recommend 50/50 shared residential time and it's a "close call" as to which parent should have custody during the school year.

Based on the trial evidence, *including the Court's in-court observation of witnesses at trial*, the Court finds and concludes that the Parenting Plan entered today is in the best interests of the child and best meets the objectives and criteria of RCW 26.09.184-.187. Without limitation, the Court has considered the following:

• The GAL reported: "There is information to suggest that Rebeccah has struggled with her attachment with her mother. [Rebeccah] talked more positively about her father and his household, and I observed that the father and Rebeccah were more openly affectionate with each other." Trial Exhibit ("Tr. Ex.") 104 at 30; *see* RCW 26.09.187(3)(a)(i).

• The GAL reported that the mother initiated therapy for the mother and *Rebeccah but during January-May 2014, the mother attended only five sessions and "either canceled or did not show up for 8 appointments."* Tr. Ex. 104 at 17-18; *see* RCW 26.09.187(3)(a)(i), (iii), (iv).

• The GAL reported: While in her mother's care, "Rebeccah was tardy to school 14 days through the winter grading period (March 12, 2015) and absent 9 days." Tr. Ex. 104 at 29; *see* RCW 26.09.187(3)(a)(iii), (v).

• The mother's son, Domanic Barclow, currently lives in Oklahoma but may move back to his mother's home in Washington sometime in 2015 or 2016. *See* Tr. Ex. 104 at 24. The trial evidence regarding Domanic is inconclusive but indicates that he has acted out sexually with other children, has anger issues, has a severe separation disorder, and may pose a risk to other children. Tr. Ex. 104 at 24, 29; *see* RCW 26.09.187(3)(a)(iii); RCW 26.09.184(1)(a)-(b).[11]

Andrea appeals.[12]

---

[11] Id. at 58 (emphasis added).

[12] John's motion to strike Andrea's reply brief on appeal is denied. Additionally, his motion for a permanent change of address for Rebeccah is placed in the file without action as such matters are beyond the scope of this appeal.

## DECISION

Trial court decisions in dissolution proceedings will seldom be changed on appeal.[13] "Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality."[14] And because the trial court has the unique opportunity to observe the parties, appellate courts are reluctant to disturb child placement dispositions.[15] Accordingly, we defer to the sound discretion of the trial court unless the superior court exercised its discretion "in an untenable or manifestly unreasonable way."[16] We will not disturb a court's findings of fact if they are supported by substantial evidence, i.e., evidence sufficient to persuade a rational person of the truth of the premise.[17]

Andrea first assigns error to the court's restrictions on Domanic's contact with Rebeccah under RCW 26.09.191(3). She contends the court's findings do not identify a sufficient "risk of harm to Rebeccah."[18] She points out that the court found the evidence regarding Domanic "inconclusive" and argues that "[a]ll allegations against Dominic are speculative and 'hearsay' at best."[19] There was no error.

---

[13] In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

[14] Id. at 809.

[15] In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting In re Marriage of Schneider, 82 Wn. App. 471, 476, 918 P.2d 543 (1996)).

[16] In re Marriage of Wayt, 63 Wn. App. 510, 513, 820 P.2d 519 (1991).

[17] In re Marriage of Stern, 57 Wn. App. 707, 717, 789 P.2d 807 (1990) (quoting Bering v. Share, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)).

[18] Appellant's Br. at 6.

[19] Id. at 7.

RCW 26.09.191(3)(g) allows a court to restrict a parent's involvement for "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child." Although the court in this case did find that "[t]he trial evidence regarding Domanic is *inconclusive*," it then said "but [the evidence] *indicates* that he has acted out sexually with other children, has anger issues, has a severe separation disorder, and may pose a risk to other children."[20] The court found that unsupervised contact with Domanic "poses a risk that is adverse to the best interests of [Rebeccah]."[21] These findings are supported by substantial evidence. The court's statement that the evidence was not *conclusive* is not inconsistent with its findings that the evidence tended to show a risk of harm.

Andrea also contends any evidence tending to show that Domanic posed a risk of harm was hearsay and therefore insufficient. But while the rules of evidence do apply to determinations regarding parenting plan restrictions pursuant to RCW 26.09.191(6), hearsay is admissible if not objected to at trial[22] and cannot be challenged for the first time on appeal.[23] Andrea's counsel did not object to admission of the guardian ad litem's report, which recited allegations that Domanic has anger and sexual issues, receives therapy for emotional issues, "was caught experimenting sexually with his 4 year old stepsister" and tried to rape her, "acted out sexually with other boys on the school bus," "has purposely hurt dogs," and was alone with Rebeccah when she had a

---

[20] CP at 58 (emphasis added).

[21] Id. at 49.

[22] State v. Myers, 133 Wn.2d 26, 34, 941 P.2d 110 (1997) ("Evidence admitted without objection may be properly considered.").

[23] RAP 2.5(a); Sepich v. Dep't of Labor & Indus., 75 Wn.2d 312, 319, 450 P.2d 940 (1969); State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

tooth knocked out.[24] In addition, Shirley Bradford testified to personal knowledge of Domanic's past anger issues and intentional assaults of pets. The court did not err in considering this evidence, which supports the court's findings.

Andrea also assigns error to the court's findings that "'[t]here is information to suggest that Rebeccah has struggled with her attachment with her mother,'" the mother missed a number of therapy sessions, and Rebeccah was tardy to school for a total of 14 days while in her mother's care.[25] Andrea contends these findings fail to mention other evidence that was before the court, including evidence she submitted on reconsideration. But matters involving conflicting testimony, credibility, and the weight or persuasiveness of the evidence are for the trier of fact and are not reviewable on appeal.[26]

There is no showing that the court exercised its discretion in a manifestly unreasonable way.

Affirmed.

WE CONCUR:

---

[24] CP at 25-26.

[25] Appellant's Br. at 1-2 (quoting CP at 58).

[26] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).