*In re* CUSTODY OF JASON ARQUILLA.—(SUE A. ARQUILLA, Petitioner-Appellant and Appellee, *v.* ROBERT B. ARQUILLA, Respondent-Appellee and Appellant.)

First District (4th Division)   Nos. 79-1745, 79-2006 cons.

Opinion filed June 26, 1980.—Rehearing denied July 17, 1980.

Alan T. Sraga, of Anthony Scariano & Associates, of Chicago Heights, for appellant.

August A. Grundei, of Chicago, for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action was brought pursuant to the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 609). Plaintiff, Sue A. Arquilla, having sole custody, petitioned for leave to remove the parties' 6-year-old child, Jason, to Louisiana. Plaintiff also sought to have the defendant, Robert B. Arquilla, pay attorney's fees incurred in the action. The trial court ruled the best interests of the child were served by his continued residence near his father in this State. The petition for removal was denied on that basis. Plaintiff appeals from the judgment. The trial court awarded plaintiff attorney's fees in the amount of $3,900. From that latter determination, an appeal was taken by defendant.

We reverse the trial court's judgment denying removal of the child, and we reverse the order awarding attorney's fees.

Sue Arquilla testified she received her bachelor's degree in education and psychology in 1972 and had taken courses toward her master's degree. She indicated that she had a teaching certificate in elementary education but little teaching experience. Her testimony revealed she had been employed as a data analyst for the American Hospital Association, and her annual salary was $10,280.

Plaintiff testified about her search for better employment. She looked into positions in her area of expertise, primarily in mental health centers. The salaries offered her were all in the area of $10,000. A factor included in plaintiff's decision to leave the Chicago area was the difficulty in finding suitable work which provided adequate salary and opportunity for career advancement.

Plaintiff stated she had spoken to various people in the New Orleans area and had been offered a job as a management trainee. The firm offer of employment came in the summer of 1978 but was closed prior to the hearing. At the time of the hearing, plaintiff disclosed, she was in contemplation of another firm offer of employment in a management and counseling trainee position in New Orleans. The offered salary ranged between $15,000 and $16,000 per year. In that position, she was to be employed in a field for which she had been trained. She testified the job remained open for her pending the conclusion of the removal hearing.

Additional testimony was received that the cost of living in the New Orleans area was considerably lower than what existed in the Chicago area. Although plaintiff had not secured housing in the area, she expressed confidence in being able to find a place within a month to 6 weeks of her arrival. Plaintiff stated her mother lives in the New Orleans area. She planned to live with her mother until she found housing of her own.

According to testimony of plaintiff's mother, the proposed temporary residence is in a quiet residential community. It is in proximity to churches, schools, homes and apartments. Plaintiff's mother also expressed intention to babysit while plaintiff was working.

Testimony revealed that a boy's club in the area had a summer program and an after-school program. The neighborhood park district also sponsors after-school and summer programs.

The 6-year-old child, Jason, testified. He stated he had been to New Orleans and he liked it there. He also testified he wanted to go to New Orleans to live, but he expressed regret that he would not see his father as often because it was so far away. The court noted that reasonable visitation had been suggested by plaintiff.

Dr. Roberta Bear was called as an expert witness on behalf of plaintiff. She testified to being in private practice in Chicago Heights, Illinois, and licensed by the State of Illinois as a psychologist. Dr. Bear stated she formed a professional opinion concerning the effect removal would have on the child. She found Jason to be stable and there was no reason why he could not handle the physical and emotional impact of a change in residence.

In addressing the removal issue, we point to our decision in *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 376 N.E.2d 279, for statement of the rule governing this case. In *Gallagher*, a petition was filed to modify the judgment for divorce insofar as it prohibited removal of the child from Illinois. In that case, this court granted the petition to remove the child from Illinois to Colorado. We clearly outlined the pertinent rules. The opinion stated:

> "The court may grant leave, before or after judgment, to any party having custody of the minor child or children to remove such child or children from Illinois whenever such approval is in the best interest of such child or children. (Ill. Rev. Stat. 1967, ch. 40, par. 14.) The burden of proof is, of course, on the party seeking judicial approval of the proposed removal." (*Gallagher*, at 29.)

The opinion goes on to quote the Supreme Court of New Jersey in *D'Onofrio v. D'Onofrio* (1976), 144 N.J. Super. 200, 365 A.2d 27, as it stated:

> " 'It [the court] should consider the prospective advantages of the move in terms of its likely capacity for improving the general

quality of life for both the custodial parent and the children. * * * The court should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style * * * be forfeited * * * where reasonable alternative visitation is available and where the advantages of the move are substantial.' " *Gallagher*, at 31.

The trial court indicated in the order that it considered all the relevant factors in evidence concerning the best interests of the child. It found his best interests were served by his remaining in proximity to his father.

■■ We reverse because the test, as developed in *Gallagher*, is not singly to establish what is in the best interest of the child. Rather, the question is also whether the general quality of life for both *the custodial parent and the child* will be improved by the removal. It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain and enhance *their* standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted.

■■ In view of the facts stated above, the balance of the record, and in light of the proper test, we find the plaintiff's petition for removal should be granted.

As for the award of attorney's fees, the general rule is that in order to justify an allowance of attorney's fees the plaintiff in a divorce case must show both inability to pay and the ability of the other spouse to do so. (See, *e.g.*, *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282; *Berg v. Berg* (1967), 85 Ill. App. 2d 98, 229 N.E.2d 282.) While we recognize there is no prohibition against awarding attorney's fees to unsuccessful litigants in divorce cases (see *e.g.*, *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288; *Sidwell v. Sidwell* (1978), 58 Ill. App. 3d 33, 373 N.E.2d 814), we find the general rule too harsh where, as here, one party appears before the court seeking post-judgment relief due to circumstances not created by the other.

■■ The petition for removal in this case was strictly for the benefit of petitioner and child. To require defendant to pay fees and costs where benefit inures solely to petitioner would be harsh and unjust under the circumstances here. In *Moore v. Black* (1956), 10 Ill. App. 2d 339, 134 N.E.2d 347, a divorced wife who was granted custody of the children petitioned the court to modify the terms of the decree to allow her to remove them to another jurisdiction where her new husband had found employment. The request was granted and attorney's fees were allowed

to the wife. On appeal, the court determined that attorney's fees should not have been allowed, proceeding on the theory that while the modification was in the best interests of the children, it does not follow that plaintiff's petition for modification was required by circumstances created by defendant.

The circumstances of this case do not merit the award of attorney's fees.

For the aforesaid reasons, the judgment of the circuit court is reversed.

Reversed.

LINN, P. J. and ROMITI, J., concur.