# IN THE SUPREME COURT, STATE OF WYOMING

# 2012 WY 167

OCTOBER TERM, A.D. 2012

December 28, 2012

JEFFREY R. ARNOTT,

Appellant
(Defendant),

v.

No. S-12-0089

PAULA a/k/a POLLY A. ARNOTT,

Appellee
(Plaintiff).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

***Representing Appellant:***
Leah K. Corrigan and James K. Lubing, Lubing & Corrigan, LLC, Jackson, Wyoming.

***Representing Appellee:***
Anne B. Ashley, Anne B. Ashley, LLC, Jackson, Wyoming.

***Guardian Ad Litem:***
Steven R. Dwyer, The Law Office of Steven R. Dwyer, LLC, Jackson, Wyoming.

***Before KITE, C.J., HILL, VOIGT, BURKE, JJ., and GOLDEN, J., Retired.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]   Appellant, Jeffrey Arnott (Father), challenges the district court's order denying his petition for modification of the parties' divorce decree, which granted primary physical custody of the parties' two daughters to Appellee, Paula ("Polly") Arnott (Mother). Father sought modification of custody after Mother gave notice of her intention to relocate to Virginia with the children. Relying on this Court's decision in *Watt v. Watt*, 971 P.2d 608, 614 (Wyo. 1999), the district court applied a "strong presumption in favor of the right of a custodial parent to relocate with her children" and determined that Father had failed to establish a material change in circumstances warranting an analysis of whether modification would be in the best interests of the children.

[¶2]   On appeal, Father contends that our decision in *Watt* should be overturned. He asserts that application of that precedent undermines his constitutionally protected parenting rights and the state's interest in promoting the best interests of the children. We agree and hold that application of a presumption favoring the relocating custodial parent should not be applied in determining whether there has been a material change in circumstances. To the extent that our decision in *Watt* mandates application of such a presumption, it is hereby overturned. Because the district court applied this presumption in determining that Father had failed to meet his burden of proving a material change in circumstances, we reverse and remand for further proceedings consistent with this opinion.

*ISSUES*

[¶3]   Father presents the following issues for our consideration:

1. Did the District Court err when it determined that this Court's holdings in *Watt* and *Resor* foreclosed a determination that an interstate relocation can give rise to a substantial change in circumstances sufficient to consider a custody modification?

2. In the alternative, and as a matter of first impression, did the District Court's application of *Watt* and *Love* violate the Father's fundamental constitutional right to raise his children?

3. Also in the alternative, to the extent the District Court did not err in its interpretation of *Watt*, and the *Watt* standard is retained as constitutional, did the District Court exceed the bounds of reason in deciding that the Mother's move

1

of 2,140 miles still allows for reasonable visitation for Father?

Mother states the issues as follows:

1. Was the District Court correct in determining that an interstate relocation by the primary custodial parent, standing alone, does not constitute a material and substantial change in circumstances sufficient to modify custody under Wyoming law?

2. Did the District Court correctly determine that the custodial parent's motives for relocating were legitimate, sincere and in good faith?

3. Did the District Court correctly determine that reasonable visitation is still available to the non custodial parent after relocation?

## *FACTS*

[¶4]    The parties were married in 2001 and lived together in Jackson, Wyoming until their divorce in 2010. Their first daughter, AGA, was born on June 6, 2003, and their second daughter, ALA, was born on June 30, 2005. At the time of their divorce, the parties agreed that they would share joint legal custody of the children, and that Mother would have primary physical custody, subject to Father's reasonable visitation. The parties agreed to "consult with each other regarding major decisions involving the children, including but not limited to their education, health, and other issues involving the children's welfare." The parties agreed that Father would have visitation every other weekend, as well as on alternating Thursdays. They also agreed to Father's visitation on alternating holidays and during two two-week periods in the summer. The decree of divorce required Mother to provide notice if she intended to relocate.

[¶5]    On July 8, 2011, Mother filed a notice of intent to relocate, indicating that she intended to move with the children to Mechanicsville, Virginia on August 13, 2011. Ten days later, Father filed a petition for modification of custody alleging that Mother's anticipated move constituted a material change in circumstances with respect to custody and visitation. The petition also alleged that it was in the best interests of the children for Father to have primary residential custody. On Father's motion, the court issued a temporary order enjoining Mother from removing the children from Wyoming pending a hearing on the merits of Father's petition.

[¶6]    Mother moved to dismiss the petition to modify custody and visitation, asserting

2

that under this Court's decision in *Watt*, relocation by a custodial parent, by itself, is not a material change in circumstances sufficient to justify a modification of child custody. The district court converted the motion to dismiss to a motion for summary judgment after Father filed an affidavit with his response to the motion, and the court invited the parties to supplement their pleadings and provide additional evidence. After a hearing, the court denied Mother's motion, finding there were issues of material fact as to "whether the circumstances surrounding [Mother's] proposed move to Virginia would constitute a material change of circumstances justifying a modification of the parties' custody arrangement." A hearing on Father's petition was held in early November, 2011.

[¶7]   The district court began the hearing by noting that *Watt* and its progeny had established a presumption in favor of the custodial parent's right to relocate with the children:

> Whether you disagree with it or whether you agree with it and whether you like it or not, the law is very clear in Wyoming when it comes to considering whether a material and substantial change of circumstances exists sufficient to modify custody when a custodial parent wishes to relocate with [the] children.
>
> It's a high standard, the – there's a strong presumption in Wyoming in favor of the right of a custodial parent to relocate with [the] children, assuming certain criteria are satisfied. . . .

During the hearing, the court received testimony from several witnesses, including the parties, the children's dual-language immersion teacher, a nurse from their pediatrician's office, Mother's sister, and a close personal friend of Father's. At the conclusion of the hearing, the court issued its ruling from the bench.

[¶8]   The court found that the children had "an outstanding set of parents" and "an incredibly involved father whose life revolves around his relationship with his children." The court noted that both Mother and Father were exemplary parents, that the children were "thriving" in their current environment, and that the "arrangement here in Jackson has worked incredibly well." The court further commented that "If I had my wish it would be that Ms. Arnott would find some way to stay here or nearer so that the extraordinary relationship that Mr. Arnott has with his children could continue to blossom in a similar fashion." But the court again noted that Wyoming precedent had created a "strong presumption in favor of allowing the custodial parent to move with [the] children" and had placed a "difficult burden" on the noncustodial parent to show a material change in circumstances based on the custodial parent's relocation.

[¶9] Following the criteria set forth in *Watt*, the district court determined that Mother's motives for the relocation were legitimate, sincere, and in good faith. The court also found that Mother's relocation would still permit Father's reasonable visitation if visitation was expanded. The court concluded that Father had not established that Mother's relocation constituted a material change of circumstances sufficient to warrant consideration of a change in custody. The court's oral ruling was memorialized in a written Order Denying Defendant's Petition for Modification of Custody and Visitation, issued on December 27, 2011. Mother moved to Virginia with the children shortly thereafter.

[¶10] After both parties submitted proposals for a revised visitation schedule, the court ordered a visitation plan for Father that increased his summer visitation to eight weeks, and expanded visitation during school holidays and during a week in February. The visitation plan also allowed Father to visit the children at any time in Virginia with advance notice. Father appeals from the district court's order.

### *STANDARD OF REVIEW*

[¶11] Father contends the district court misapplied Wyoming law with respect to whether an interstate relocation constitutes a "material change in circumstances" sufficient to warrant modification of child custody. This Court reviews questions of law *de novo*. *Willis v. Davis*, 2010 WY 149, ¶ 10, 243 P.3d 568, 570 (Wyo. 2010). Father also claims the district court's decision abridged his constitutional right to raise his children, and asks this Court to overrule the decision in *Watt*. We review constitutional issues *de novo*. *Hanson v. Belveal*, 2012 WY 98, ¶ 12, 280 P.3d 1186, 1191 (Wyo. 2012). Finally, Father asserts that the district court exceeded "the bounds of reason" in determining that Mother's relocation would still permit reasonable visitation. On this issue, we review for an abuse of discretion. "The trial court has discretion in determining custody and visitation issues to be in the best interests of the children: 'Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court.'" *Zupan v. Zupan*, 2010 WY 59, ¶ 12, 230 P.3d 329, 333 (Wyo. 2010) (quoting *Pace v. Pace*, 2001 WY 43, ¶ 9, 22 P.3d 861, 865 (Wyo. 2001)).

### *DISCUSSION*

[¶12] Disputes arising from the relocation of a custodial parent "present some of the knottiest and most disturbing problems that our courts are called upon to resolve." *Tropea v. Tropea*, 665 N.E.2d 145, 148 (N.Y. 1996). As one commentator has noted,

> Relocation cases are "intractable problems" and the "San Andreas fault" of family law. When one parent attempts to move a child a significant distance from the other parent, the child's relationship with each parent changes in quality and

4

quantity. These "no-win" cases are occurring with increasing frequency, create enormous tensions for parents and their children, and burden the legal system and the judges who have to decide them. A potential relocation can generate conflict in cases where there had been none before, reopen old wounds in others, or exacerbate an already highly-conflicted situation.

Elrod, Linda D., *National and International Momentum Builds for More Child Focus in Relocation Disputes*, 44 Fam. L.Q. 341, 341-42 (2010). Unfortunately, such cases are increasingly common.[1] In this case, Father contends that Mother's relocation to Virginia is a material change of circumstances warranting modification of custody.

[¶13] As a general rule, the provisions of a divorce decree, including those pertaining to child custody, are subject to the doctrine of res judicata, which bars litigation of issues that were or could have been determined in a prior proceeding. *Mentock v. Mentock*, 638 P.2d 156, 158 (Wyo. 1981). Res judicata "is mandated by public necessity; there must be an end to litigation at some point, or else the legal system would become so bogged down that nothing would ever remain decided." *Id.* This Court has recognized, however, that application of res judicata to a petition for modification of child custody is not appropriate where there has been a "material or substantial change in circumstances" with respect to the initial custody determination. *Id.* In that instance, res judicata does not apply because "[the] modification proceeding involves new issues framed by facts differing from those existing when the original decree was entered. A new adjudication of the rights of the parties must be made. For all intents and purposes it is a separate and distinct case from the original proceeding." *Leitner v. Lonabaugh*, 402 P.2d 713, 719 (Wyo. 1965).

[¶14] The applicability of res judicata has been functionally incorporated as a threshold inquiry under Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2009), enacted in 2000, which governs modification of child custody generally. The statute requires a determination that there has been a material change in circumstances before a court may consider whether modification of custody is in the best interests of the children:

---

[1] "According to the U.S. Census Bureau, about 1 in 6 Americans moves each year. Approximately 7 million people a year move from state to state. The 'average American' makes 11.7 moves in a lifetime. Because of the ordinary needs of both parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location." *In re Marriage of Ciesluk*, 113 P.3d 135, 147 (Colo. 2005) (internal citations omitted).

**§ 20-2-204. Enforcement and modification.**

. . .

> (c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a ***material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children*** pursuant to W.S. 20-2-201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

(Emphasis added.) We have stated that, pursuant to Wyo. Stat. Ann. § 20-2-204(c),

> The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step — determining whether a modification would be in the best interests of the child.

*Hanson*, ¶ 18, 280 P.3d at 1193 (quoting *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006)) (citations omitted). The burden is on the party seeking modification of a custody order to prove, first, that there has been a material change in circumstances, and second, that modification would be in the best interests of the children. *Hanson*, ¶19, 280 P.3d at 1193.

[¶15] The present case relates to the threshold inquiry under Wyo. Stat. Ann. § 20-2-204(c): whether relocation of a custodial parent may constitute a material change in circumstances sufficient to warrant consideration of whether modification of custody is in the best interests of the children. Because relocation of a custodial parent is not addressed in Wyo. Stat. Ann. § 20-2-204, or in any other provision of the domestic relations code, our analysis is guided by relevant case law. Father asks us to hold, contrary to established precedent, that relocation of a custodial parent may constitute a material change in circumstances warranting the district court's consideration of the best interests of the children. In order to facilitate our discussion of the issues presented, we begin by setting forth a brief history of our precedent relating to modification of child

6

custody based on a custodial parent's relocation.

[¶16] This Court's first occasion to consider modification of child custody based on the possible relocation of a custodial parent arose in *Martin v. Martin*, 798 P.2d 321 (Wyo. 1990). In that case, both parents remained in Laramie at the time of their divorce, and the divorce decree specified that each parent would have physical custody of the children for six months of the year. *Id.* The divorce decree further specified, however, that if either parent relocated from Laramie, the relocating parent would have custody for three months, and the remaining parent would have custody for nine months. *Id.* at 321-22. On appeal, this Court held that inclusion of the provision for automatic future modification of child custody was an abuse of discretion, noting that child custody determinations are based on the best interests of the children, and that such a determination cannot be made absent "all facts necessary to make such a determination."

> The district court's anticipatory conclusion that the best interest of the children will be served by a nine-month/three-month split in favor of the parent remaining in Laramie is an abuse of discretion. As noted above, the test for child custody is the best interests of the children, and such a decision cannot be made without the district court having before it all facts necessary to make such a determination. What those facts may be, if and when one or the other parent leaves Laramie, can only be pure speculation at this point in time. Such speculation is not a substitute for complete analysis of all existing circumstances when and if a change in the established child custody arrangement becomes necessary.

*Id.* at 323.

[¶17] The Court's next opportunity to consider a modification of custody based on relocation was presented in *Love v. Love*, 851 P.2d 1283 (Wyo. 1993). In that case, the custody arrangement provided that mother would have physical custody of the parties' two children while school was in session, and that father would have physical custody during the summer. *Id.* at 1284. The divorce decree incorporated a stipulation of the parties that "the residence of the children will not be changed to a place beyond the radius of 100 miles from the City of Sheridan, Wyoming, unless both parents consent thereto or unless an order . . . has been entered approving such change." *Id.* at 1285. Mother subsequently sought an order to show cause as to why she should not be allowed to change her residence and that of her children to Sioux Falls, South Dakota. *Id.* In response, father claimed that mother's relocation was a sufficient change of circumstances to warrant modification of custody. *Id.* The district court held a hearing on mother's application for a change of residence, at which it received testimony from the parents and from a psychologist who expressed his opinion as to the custodial

arrangement that would promote the best interests of the children. *Id.* The psychologist testified that the parties' 15-year-old son was capable of making "a reasonable decision in his own best interest," but that it would be in the 11-year-old daughter's best interests "to have predominant contact with her mother." *Id.* The district court determined that "the residence of the minor children of the parties may be changed to a place beyond the radius of 100 miles from [Sheridan, to Sioux Falls]." *Id.* at 1286.

[¶18] On appeal, this Court affirmed the district court's decision with respect to the parties' daughter. *Love,* 851 P.2d at 1291. Because the discussion in *Love* provides the foundation for Wyoming's jurisprudence relating to modification of child custody based upon relocation of a custodial parent, we set forth portions of that decision at length:

> This court's test to determine custody is well established. We have said that the "goal to be achieved is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." *Leitner v. Lonabaugh,* 402 P.2d 713, 720 (Wyo. 1965); *See also, Fanning v. Fanning,* 717 P.2d 346, 353 (Wyo. 1986); *Bereman v. Bereman,* 645 P.2d 1155[, 1160] (Wyo. 1982); *Ayling v. Ayling,* 661 P.2d 1054, [1056] (Wyo. 1983); *Yates v. Yates,* 702 P.2d 1252, 1256 (Wyo. 1985).

> . . .

> Cases involving relocation of parents are fact sensitive; we would be remiss to attempt to define a bright line test for their determination. Where the issue is relocation of one of the parties, we must remember that the best interests of the child standard was applied at the time of the initial custody award. Therefore, our review looks more closely at balancing the continued rights of the parties with the best interests of the children as established at the time of divorce. We will consider the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement. We will consider also whether the relocating parent's motives for proposing the move are legitimate, sincere, in good faith, and whether reasonable visitation is possible for the remaining parent. *See, Arquilla* [*v. Arquilla*], 407 N.E.2d [948,] 950 [(Ill. App. 1980)]; *Holder v. Polanski,* 111 N.J. 344, 544 A.2d 852, 855 (N.J. 1988).

8

. . .

The district court did not make comparisons between the children's current schools and the Sioux Falls school system but concluded that the children "will do equally well whether they are in Sheridan or Sioux Falls, or probably if they were anyplace they're going to do equally well." In this context, we agree with a Michigan court which stated:

> "'We live in a transient society. With respect to the best interests of a child, state boundaries are artificial and meaningless; there is no presumption that bringing up a child in Michigan has any advantage (or disadvantage) over Missouri or Georgia, or any other state. To conclude otherwise would be a meaningless generalization. Restrictions upon where a custodial parent may live, in terms of geography, are not realistic. In every state there are good and bad places to bring up a child.'"

*DeGrow v. DeGrow*, 112 Mich. App. 260, 315 N.W.2d 915, 918 (Mich. App. 1982) (quoting *Hutchins v. Hutchins*, 84 Mich. App. 236, 269 N.W.2d 539, 540 (Mich. App. 1978) (Beasley, J., concurring)). This statement surely applies to comparisons between Wyoming and South Dakota as well.

The test we will utilize in relocation cases is most similar to that espoused in *Arquilla*. We agree:

> It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain and enhance *their* standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted.

*Arquilla*, 407 N.E.2d at 950.

We acknowledge that mother's plans at this time are speculative; she has not enrolled herself or her children in

9

school, purchased a home or identified employment opportunities in Sioux Falls. Her previous employment in Sheridan, however, was not long term, found to be unappealing and in less than three years her alimony support will terminate. Mother has identified what she believes to be a positive solution to these problems: relocation to Sioux Falls.

To this discussion we add the consideration of whether an "established custodial environment continues to exist despite a change in the children's domicile." *DeGrow*, 315 N.W.2d at 917. This situation has been defined as one that

> emphasizes the continuity and strength of an established relationship between a custodian and a child. The custodial environment is the family unit which cannot be destroyed by a simple change in geographic location. The family unit still will be preserved in the new domicile.

*DeGrow*, 315 N.W.2d at 918.

As the district court recognized, despite a change in residence, there is no reason to suggest that mother will not continue to provide a caring, nurturing environment for her children. We agree that [the parties' daughter] should stay with her mother. This part of the district court's decision is supported by the testimony of Dr. Leugers and mother who identified [the daughter's] emotional needs in this area.

Father also raises the issue of problematic visitation if mother is to move. He stated that his weekend visitation would be "non-existent" because of the distance between the two towns. Father's change in visitation due to mother's relocation is unfortunate, but not an unusual result of divorce. *Nelson v. Card*, 162 Colo. 274, 425 P.2d 276, 278 (Colo. 1967). We agree that a court

> should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is

10

available and where the advantages of the move are substantial.

> *D'Onofrio* [*v. D'Onofrio*], 365 A.2d [27,] 30 [(N.J. 1976)]. Mother's motive for wanting to relocate is legitimate, sincere and in good faith. Though the details of the move have not been fleshed out, the district court was convinced that mother's exceptional parenting would continue in another locale. The record does not disclose whether either party contemplated an alternative to the current visitation arrangement. However, more than inconvenience to the noncustodial parent must be shown to defeat the custodial parent's right to relocate. *Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606, 614 (N.J. 1984). This court recently upheld a complex and somewhat restrictive visitation schedule for the father of two young children who were in the custody of their mother, living in Las Vegas. In that case we underscored that establishment of visitation schedules is within the sound discretion of the district court. *Rowan v. Rowan*, 786 P.2d 886, 891 (Wyo. 1990). Though visitation for father may be more difficult, it is still within the bounds of reason.

> . . .

> We discern no abuse of discretion by the district court in permitting mother to relocate with the youngest child.

*Love*, 851 P.2d at 1287-89 (italics in original).

[¶19]  With respect to the district court's decision as it pertained to the parties' son, however, this Court reached a different conclusion. We reversed the district court's decision to maintain the same custodial arrangement with respect to the parties' son based on the court's failure to "acknowledge and give weight to his wishes" regarding geographic preference. *Id*. at 1291.

> Considering the preferences of children in custody matters, we have said that "the preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests." *Roberts* [*v. Vilos*], 776 P.2d [216,] 218 [(Wyo. 1989)]. Though this is one factor to consider, "such preference is not conclusive." *Yates v. Yates*, 702 P.2d 1252, 1255 (Wyo. 1985). In the few cases in which we have deliberated this

11

issue, we have provided the following quote which still aptly applies:

> Such we think is the general rule; for, if the happiness and welfare of the infant is to be consulted, nothing could be more potent upon that question than the expression of [the child's] preference based upon kindness or unkindness, care or want of care, love and affection or want thereof, and, as to the surrounding conditions, either with one or the other.

> *Yates*, 702 P.2d at 1256 (quoting *Tytler v. Tytler*, 15 Wyo. 319, 338, 89 P. 1, 6 (1907)).

> It appears to be the almost universal rule that at least when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to [the child's] future welfare, based upon facts and not mere whims, [the child's] wishes are one factor which may be considered by the court in determining custody, in doubtful cases in any event, usually not because of any legal right in the child to have [the child's] wishes granted, but because the consideration of such wishes will aid the court in making a custodial decree which is for the best interests and welfare of the child.

> *Yates*, 702 P.2d at 1256 (quoting Annotation, *Child's Wishes as a Factor in Awarding Custody*, 4 A.L.R. 3d 1396, 1402 (1965 & Supp. 1992)). *See also, Douglas v. Sheffner*, 79 Wyo. 172, 331 P.2d 840, 844 (Wyo. 1958).

*Love*, 851 P.2d at 1289-90. Noting that an abuse of discretion occurs when "a material factor deserving significant weight is ignored," this Court found that the district court's failure to weigh the son's geographic preference in determining which party should be awarded primary physical custody was an abuse of discretion. *Id.* at 1291.

[¶20] The Court took Wyoming's relocation jurisprudence a step further in *Watt*. In that case, mother was granted primary physical custody of the parties' three children. *Id.*, 971 P.2d at 610. However, the divorce decree provided for an automatic change in custody from mother to father if mother moved more than fifty miles from Upton, Wyoming, where the parties resided. *Id.* After mother was accepted into the pharmacy program at the University of Wyoming, she sought modification of the divorce decree in order to

allow her to pursue her degree in Laramie. *Id.* Father opposed the modification and requested that custody be awarded to him based on the automatic change in custody provision in the divorce decree. *Id.* The trial court ruled that it had erred in providing for an automatic change of custody in the decree and refused to invoke it. *Id.* Nonetheless, the district court found a material change in circumstances based on mother's relocation and found that the children's best interests would be served by remaining with their father in Upton. *Id.* at 612.

[¶21]  On appeal, this Court began its review with a discussion of *Love*, placing emphasis on that opinion's pronouncement, in a quotation from *Arquilla*, that "So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted." *Watt*, 971 P.2d at 614 (emphasis omitted).  The Court pronounced that "Relocation as a substantial and material change in circumstances was foreclosed by the decision in *Love*. ***Our decision established a strong presumption in favor of the right of a custodial parent to relocate with her children***, assuming that the criteria articulated in *Love* are satisfied." *Id.* (emphasis added).  In determining that the trial court abused its discretion in finding a material change in circumstances based on mother's relocation, *Watt* held that "a relocation, by itself, is not a substantial or material change in circumstances sufficient to justify a change in custody order." *Id.*  The decision focused heavily on the custodial parent's right to travel, reasoning as follows:

> The constitutional question posed is whether the rights of a parent and the duty of the courts to adjudicate custody serve as a premise for restricting or inhibiting the freedom to travel of a citizen of the State of Wyoming and of the United States of America.  We hold this to be impossible.  The right of travel enjoyed by a citizen carries with it the right of a custodial parent to have the children move with that parent.  This right is not to be denied, impaired, or disparaged unless clear evidence before the court demonstrates another substantial and material change of circumstance and establishes the detrimental effect of the move upon the children. *See In re Marriage of Burgess*, 13 Cal. 4th 25, 51 Cal. Rptr. 2d 444, 913 P.2d 473, 480 (1996) and *Matter of Marriage of Greene*, 107 Ore. App. 338, 812 P.2d 11, 11 (1991).  While relocation certainly may be stressful to a child, the normal anxieties of a change of residence and the inherent difficulties that the increase in geographical distance between parents imposes are not considered to be "detrimental" factors. *Cf. In re Marriage of Sheley*, 78 Wash. App. 494, 895 P.2d 850, 856 (1995), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wash. 2d 39, 940 P.2d 1362,

13

1371 (Wash. 1997) and Janet M. Bowermaster, *Sympathizing with Solomon: Choosing Between Parents in a Mobile Society*, 31 U. Louisville J. Fam. Law 791, 799 (1992-93).

The sound policy reasons which support this analysis were articulated by the Supreme Court of California:

> As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs for **both** parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimizing costly litigation over custody and require the trial courts to "micromanage" family decisionmaking by second-guessing reasons for everyday decisions about career and family.

*In re Marriage of Burgess*, 913 P.2d at 480-81 (emphasis in original). An inhibition upon the right to travel is never imposed upon the non-custodial parent who is free to move at will despite the location of the children. The motives of the non-custodial parent will not be questioned by the court with respect to such relocation, and the custodial parent has no power to inhibit it. The inherent inequities of such a situation stand as an additional reason that courts have concluded that custodial parents should be permitted to move with their children. *In re Marriage of Francis*, 919 P.2d 776, 784 (Colo. 1996); *D'Onofrio*, 365 A.2d at 30.

Mr. Watt, as the non-custodial parent in this situation, was required to carry the burden of demonstrating that a material and substantial change of circumstances had occurred, sufficient to justify the trial court in ordering a change in custody. He did not meet that burden other than by establishing the relocation, which we hold, as a matter [of]

14

law, is not, without more, a material and substantial change of circumstances for purposes of invoking Wyo. Stat. § 20-2-113(a) (Repl. 1994). "'[A] party must show, in addition to the existence and extent of the change, that the change is significant **in relation to** the modification sought.'" *Stevens v. Collard*, 837 P.2d 593, 596 (Utah App. 1992), *cert. denied*, 862 P.2d 1356 (Utah 1993) (quoting *Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984)) (emphasis in original).

In light of our prior cases, and our concern for the protection of constitutional liberties of the citizens of the State of Wyoming, we hold that an intrastate relocation by a custodial parent, taking the children along, cannot by itself be considered a change in circumstances sufficiently substantial and material to justify reopening the question of custody. In various ways, several of our sister jurisdictions have adopted this rule. *E.g., Jaramillo v. Jaramillo*, 113 N.M. 57, 823 P.2d 299, 304-05 (1991); *Matter of Marriage of Duckett*, 137 Ore. App. 446, 905 P.2d 1170, 1172 (1995); *Matter of Marriage of Greene*, 812 P.2d at 11-12; and *Fossum v. Fossum*, 1996 SD 38, 545 N.W.2d 828, 832-33 (S.D. 1996).

This precept also applies to factors that are derivative of the relocation. The custodial parent's right to move with the children is constitutionally protected, and a court may not order a change in custody based upon that circumstance alone. Some other change of circumstances, together with clear evidence of the detrimental effect of the other change upon the children, is required. Such a circumstance necessarily would have to be sufficiently deleterious to the welfare of the children that by itself it would serve as a substantial and material change in circumstances even in the absence of a relocation.

The trial judge in this case changed custody from Mrs. Watt to Mr. Watt based upon Mrs. Watt's move to Laramie. The other factors articulated by the trial court, such as Mrs. Watt's alleged previous interest in seeing her children brought up in Upton; the relocation of the maternal grandparents to Upton; or Mrs. Watt's status as a student do not, together or separately, constitute a material and substantial change in circumstances to justify the order of the trial court. Those circumstances are examples of those

15

factors, clearly related to and derivative of the relocation, which have no negative impact upon the welfare of the children. Mrs. Watt moved to Laramie for legitimate, sincere, and good faith reasons, and Mr. Watt is seeking to obtain custody of his sons for legitimate, sincere, and good faith reasons. No evidence in the record shows the move is detrimental to the children, unless it be the speculative suggestion by the trial court that a concern exists as to Mrs. Watt's status as a student in a discipline that is a difficult undertaking and its detraction from her ability to rear her children.

Reasonable visitation remains possible, even if that visitation might be less than what Mr. Watt previously enjoyed. Visitation can be resolved by the appropriate exercise of the broad discretion of the trial court to modify orders with respect to contact and visitation in order to minimize the loss of contact and visitation between children and the non-custodial parent. Relocation indeed is a ground for such a modification. It is not a ground for modifying custody. Without the presence of a material and substantial change in circumstance to justify a change in custody in this case, the trial court should not have considered the issue.

*Watt*, 971 P.2d at 615-17.

[¶22] Although *Watt* has been cited with approval in several of this Court's subsequent decisions, the results reached in those cases were not dependent upon application of the presumption in favor of the relocating, custodial parent established in *Watt*. *See Hanson*, ¶ 36, 280 P.3d at 1197-98 (affirming denial of father's petition to modify custody after noting that "Given that Mother had returned to Wyoming by the time of trial and that Father did not request consideration of his own relocation, the parties' respective relocations outside Wyoming were not factors for the district court's consideration in determining whether there had been a material change in circumstances. We therefore do not give the relocations any further consideration."); *Zupan*, ¶¶ 35-36, 230 P.3d at 338-39; *Testerman v. Testerman*, 2008 WY 112, 193 P.3d 1141 (Wyo. 2008); *Morris v. Morris*, 2007 WY 174, 170 P.3d 86 (Wyo. 2007); *TW v. BM*, 2006 WY 68, 134 P.3d 1262 (Wyo. 2006); *Harshberger v. Harshberger*, 2005 WY 99, 117 P.3d 1244 (Wyo. 2005); and *Resor v. Resor*, 987 P.2d 146 (Wyo. 1999).

[¶23] In at least one case decided after *Watt*, we have suggested that a relocation, by itself, may constitute a material change in circumstances. In *JRS v. GMS*, 2004 WY 60, 90 P.3d 718 (Wyo. 2004), father was initially awarded custody of the parties' two older

children, and mother was awarded custody of the two younger children. Father filed a petition to modify custody, asserting that mother's relocation to South Dakota and her failure to cooperate in permitting visitation constituted a material change in circumstances. *Id.*, ¶¶ 3-5, 90 P.3d at 719-20. Father asserted that it was in the best interests of the younger children to be in his custody. *Id.*, ¶ 5, 90 P.3d at 720. Mother, however, also sought modification of the custodial arrangement so that she would have custody of the parties' two older children. *Id.*, ¶ 6, 90 P.3d at 720. Evidence indicated that the children's stepmother and mother's fiancé had abused the children. *Id.*, ¶ 9, 90 P.3d at 722. The district court denied the petitions to modify custody, finding no material change in circumstances. On appeal, this Court reversed, concluding that a number of factors, including mother's relocation, constituted a change in circumstances:

> ***We are unable to agree with the district court that there was not a material change in circumstances in this case. Mother's relocation to South Dakota might well have been viewed as a material change. The testimony the district court heard was that the unusual custody arrangements to which these parents agreed (it was not fashioned by the district court), worked only so long as the parents both resided in Crook County and were close enough to each other to make it functional. It did not work once Mother was in South Dakota, sometimes without a car to transport the children, and Father was not free, nor was he always able, to travel to South Dakota to facilitate visitation.*** That Mother's fiance, and her brother, were accused of sexually assaulting the parties' youngest daughter also might well have been viewed as a material change of circumstances. There was another potential material change when the youngest children were uprooted from Mother's home, and sent to live in Sheridan County with Father's new wife, the parties' two other children, and Stepmother's three children. There was likely a material change of circumstance when all four children were taken from their home and placed in DFS custody (in a group home) as a result of Stepmother's abusive acts against the children. There were potential material changes of circumstance when the children were placed in the custody of Father's mother and stepfather, and when Father was finally accorded full custody again, with his mother and stepfather providing a backup for Father. ***This list of changes in circumstances is not meant to be exhaustive. While any one of them might well have served to require the district court to reconsider a more suitable custodial arrangement for the children, the totality of these***

***circumstances requires a remand for the district court to
fully address the needs of these children with respect to
custody.*** For a more complete discussion, *see* George A.
Locke, *Change in Circumstances Justifying Modification of
Child Custody Order*, 6 POF 2d 499 (1975 and Supp. 2001).

However, a material change of circumstance does not
automatically equate with a change in custody. Custody must
be arranged so as to be in the best interests of the child(ren)
on an individualized basis. Given all that has occurred since
the divorce, the district court needs to reassess the wisdom of
the divided custody arrangement in light of the material
changes in circumstances that have occurred. Although the
parties agreed to that arrangement, they did so under
circumstances that no longer exist. Moreover, the record does
not reflect that the district court assessed the advisability of
the arrangement at the outset. We agree that the district court
should not have to "micro-manage" the custody arrangement.
The district court adopted a "PARENTAL COOPERATION"
standard in the initial decree and, in light of the rather serious
problems faced by this family, some additional management,
as suggested by the GAL, may well be in order. It is evident
from the record that the juvenile proceedings in Sheridan
County had not yet ended when the district court entered the
order now before us. One gap in that process appeared to be
an assessment of Mother's home. It is evident that the
children have expressed a preference as to where they want to
live, and the district court should take that into consideration
as well. It also appears that by now the juvenile matter in
Sheridan may have developed additional information that is
pertinent to the most desirable custody arrangement for the
children and it is important for the district court to have all
that information available to it.

*Id.*, ¶¶ 12-13, 90 P.3d at 723-24 (emphasis added). Against this background, we turn to a
discussion of the issues presented in this appeal.

[¶24] In his first issue, Father claims that our precedent relating to modification of
custody based on a relocation of a custodial parent has addressed only those situations in
which the custodial parent relocates within the state. He suggests we should hold, as a
matter of first impression, that an interstate, as opposed to an intrastate, relocation by the
primary custodial parent may constitute a material change in circumstances sufficient to
justify a modification of custody. We find no merit in that suggestion.

18

[¶25] As we noted in *Love*, in which the mother relocated from Sheridan, Wyoming to Sioux Falls, South Dakota,

> With respect to the best interests of a child, state boundaries are artificial and meaningless; there is no presumption that bringing up a child in Michigan has any advantage (or disadvantage) over Missouri or Georgia, or any other state. To conclude otherwise would be a meaningless generalization. Restrictions upon where a custodial parent may live, in terms of geography, are not realistic. In every state there are good and bad places to bring up a child.

*Id.*, 851 P.2d at 1288. There is nothing inherent in the act of crossing state boundaries that informs a determination as to whether there has been a "material change of circumstances" warranting a modification of child custody. A simple hypothetical illustration makes the point. An interstate relocation from Jackson, Wyoming to Victor, Idaho involves a distance of 25 miles, whereas an intrastate relocation from Jackson to Cheyenne, Wyoming, involves a distance of over 400 miles. In determining whether a material change of circumstances has occurred the intrastate/interstate distinction is meaningless.

[¶26] In his second issue, Father claims that our precedent, which establishes a strong presumption in favor of the relocating parent, does not adequately account for his constitutional right to raise his children. Father asserts that "The clear multi-jurisdictional trend in relocation cases is one that favors an approach that balances the fundamental constitutional rights of the parties in order to arrive at a solution that respects the rights of both parents, but holds paramount the best interests of the children." He urges us to follow this trend, and to overrule *Watt*'s holding that a relocation cannot by itself constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children.

[¶27] Mother responds by asserting that Father's constitutional claim was not raised below and, consequently, should not be considered on appeal. In the alternative, Mother contends that we should uphold Wyoming precedent pursuant to the doctrine of *stare decisis*. She asserts that "Father does not have a [c]onstitutional right to raise his children which is superior to Mother's own [c]onstitutional right as the custodial parent," and that "[t]he right of [M]other to associate with her children in their new familial configuration is important and should be respected." Mother does not dispute that most jurisdictions follow the rule recognizing that a relocation may constitute a material change of circumstances sufficient to justify a modification of custody. She notes, however, that "our own legislature has not adopted statutory presumptions for or against relocation, nor has it determined that [] a noncustodial parent's rights trump those of a custodial parent."

19

As a corollary, Mother asserts that this Court "should not adopt a new standard based on the examples of other states and other, differing statutes."

[¶28] As an initial matter, we will briefly address Mother's claim that this issue should not be addressed because it was not raised in the district court. Mother is correct that we generally do not consider issues raised for the first time on appeal. *Nodine v. Jackson Hole Mt. Resort Corp.*, 2012 WY 72, ¶ 19 n.2, 277 P.3d 112, 117 n.2 (Wyo. 2012). In the present case, however, Father's arguments below clearly addressed the competing parental interests at issue, as recognized by the district court:

> In this case, [Father] presented evidence that [Mother's] move to Virginia will undoubtedly change the nature of his close daily relationship with his daughters. The Court is moved by, and sympathetic to, [Father's] argument. Both parties are top-shelf parents and [Father] appears to be an extremely loving and very participatory father. The law in Wyoming at this time, however, weights more in favor of a custodial parent's right to reasonably relocate, and less in favor of a non-custodial parent's right to maintain the same visitation situation and close relationship that may be fostered in the absence of a move.

The district court's order acknowledges that it is bound by Wyoming precedent, and that it was required to follow this Court's existing jurisprudence establishing a presumption in favor of the relocating parent. The continued viability of that precedent is properly raised in this appeal.

[¶29] Although our jurisprudence recognizes a strong interest in adhering to past precedent under the doctrine of *stare decisis*, we have noted that departure from precedent is sometimes appropriate. *SLB v. JEO (In the Interest of ANO)*, 2006 WY 74, ¶ 6, 136 P.3d 797, 799 (Wyo. 2006). In considering whether to overrule a prior decision,

> We consider the doctrine of *stare decisis* to be an important principle which furthers the "evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."
>
> Nevertheless, we should be willing to depart from precedent when it is necessary "to vindicate plain, obvious principles of law and remedy continued injustice." When precedential decisions are no longer workable, or are poorly reasoned, we should not feel compelled to follow precedent.

20

> *Stare decisis* is a policy doctrine and should not require automatic conformance to past decisions.

*Id.* (quoting *Goodrich v. Stobbe*, 908 P.2d 416, 420 (Wyo. 1995)). In light of Father's contention that our precedent impinges on his fundamental parental rights and the rights of the state in providing for the best interests of the children, we will proceed to reexamine our decision in *Watt*.

[¶30] We begin our analysis by identifying the competing rights and interests at stake in a case involving modification of child custody based on the relocation of a custodial parent. First, as this Court properly recognized in *Watt*, the custodial parent has a right of travel worthy of protection. *Id.*, 971 P.2d at 615. Importantly, however, the custodial parent's right to travel is not the only interest deserving of protection in relocation cases. The minority time parent in a shared custody arrangement has an equally important fundamental right of familial association. *Michael v. Hertzler*, 900 P.2d 1144, 1147 (Wyo. 1995).

> [W]e have repeatedly held that, "'[t]he right to associate with one's immediate family is a fundamental liberty protected by the state and federal constitutions.' . . . Resolution of which parent shall have custody necessarily implicates the fundamental right of family association."

*FML v. TW*, 2007 WY 73, ¶ 6, 157 P.3d 455, 459 (Wyo. 2007) (quoting *Loghry v. Loghry*, 920 P.2d 664, 667 (Wyo. 1996)). Further, just as parents have a fundamental right to associate with their children, "Children have as fundamental a right to familial association [with their] parents." *LM v. Laramie County Dep't of Family Servs. (In re MN)*, 2007 WY 189, ¶ 7, 171 P.3d 1077, 1081 (Wyo. 2007).

[¶31] Additionally, the state has a compelling interest in promoting the best interests of the children. *Michael*, 900 P.2d at 1149. As we noted in *Cosner v. Ridinger*, 882 P.2d 1243, 1247 (Wyo. 1994), the best interests of the child are of "paramount concern" in decisions relating to child custody:

> Wyoming has adopted as its public policy a paramount concern for the best interests of the child in connection with child support, custody, and visitation. That policy is articulated in WYO. STAT. § 20-2-113 (Cum. Supp. 1993)[2],

---

[2] Wyo. Stat. Ann. § 20-2-113 has been repealed and replaced by Wyo. Stat. Ann. § 20-2-201, *et seq*. Wyo. Stat. Ann. § 20-2-201 retains the "best interests of the child" standard: "In granting a divorce,

which states in pertinent part:

> (a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. . . . If the court finds that both parents have shown the ability to act in the best interest of the child, the court may order any arrangement that encourages parents to share in the rights and responsibilities of rearing their children. . . . **The court which entered the decree has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires.** . . . The court shall consider evidence of spouse abuse or child abuse as being contrary to the best interest of the child. (Emphasis added.)

Notably, in *Cosner*, we cited *Martin*, 798 P.2d 321, and *Love*, 851 P.2d 1283, in stating that "Our cases echo this overriding interest in the best interests of the child in connection with child support and custody determinations." *Cosner*, 882 P.2d at 1248. In *Basolo v. Basolo*, 907 P.2d 348, 354 (Wyo. 1995), we again emphasized that the best interests of the children are of overriding importance, and that they take precedence over the fundamental rights of parents:

> In the wreckage of any marriage, . . . vindication of parental rights shall not be lavished at the expense of the "paramount purpose" of serving the welfare and best interests of the child. *Laughton v. Laughton*, 71 Wyo. 506, 529, 259 P.2d 1093, 1103 (1953). Recognition that parental rights are fundamental does not alter the cardinal rule that when the rights of a parent and the rights of a child collide, it is the rights of the parent which must yield. *Matter of MLM*, 682 P.2d 982, 990 (Wyo. 1984); *Stirrett v. Stirrett*, 35 Wyo. 206, 222, 248 P. 1, 5

---

separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children."

(1926).

Similarly, in *Stonham v. Widiastuti*, 2003 WY 157, ¶ 17 n.8, 79 P.3d 1188, 1194 n.8 (Wyo. 2003), where mother sought to return to Indonesia with her children, we stated that

> Despite the factual differences in [custody cases involving distant relocations], there is one common analytical thread in virtually every case: the best interest of the child is paramount in any award of custody and visitation, and the trial court has a large measure of discretion in making that award. ***Whether one parent is moving with the children across town or across the world, the analysis remains the same.***

(Emphasis added.)

[¶32]   Despite this clear Wyoming authority recognizing both the minority time parent's right to parent and the state's compelling interest in promoting the best interests of the children in child custody cases, these interests did not receive attention or consideration in *Watt*.  As noted above, this Court's holding in *Watt* was very explicitly, and exclusively, grounded in the custodial parent's right to travel:

> The constitutional question posed is whether the rights of a parent and the duty of the courts to adjudicate custody serve as a premise for restricting or inhibiting the freedom to travel of a citizen of the State of Wyoming and of the United States of America.  We hold this to be impossible.  The right of travel enjoyed by a citizen carries with it the right of a custodial parent to have the children move with that parent.  This right is not to be denied, impaired, or disparaged unless clear evidence before the court demonstrates another substantial and material change of circumstance and establishes the detrimental effect of the move upon the children.

*Id.*, 971 P.2d at 615-16.  In *Watt*, we seemed to marginalize both a parent's and a child's right to familial association, as well as the state's interest in the welfare of children, when we stated that "the normal anxieties of a change of residence and the inherent difficulties that the increase in geographical distance between parents imposes are not considered to be 'detrimental' factors."  *Id*. at 616.

[¶33]   Although *Watt* found that this Court's decision in *Love* had created "a strong presumption in favor of the right of a custodial parent to relocate with her children," we can discern no such presumption issuing from that decision.  Rather, in *Love*, 851 P.2d at

23

1287, the Court noted that the goal to be achieved in child custody cases "is a reasonable balance of the rights and affections of each of the parents, with paramount consideration being given to the welfare and needs of the children." In addition, noting that the "best interests" standard is applied in an initial custody determination, the Court stated that, in a modification case, "our review looks **more closely at balancing the continued rights of the parties** with the best interests of the children as established at the time of divorce." *Id.*, 851 P.2d at 1288 (emphasis added). In describing this review, the Court identified additional, *non-exclusive* factors that inform a determination as to whether modification of custody is warranted, including "the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement," "the relocating parent's motives for proposing the move," and "whether reasonable visitation is possible for the remaining parent." *Id.* Importantly, nothing in that decision indicates that the custodial parent's right to travel is entitled to a privileged position in "balancing the continued rights of the parties." Indeed, the Court implicitly rejected any presumption in favor of either parent in stating that "Cases involving relocation of parents are fact sensitive; we would be remiss to attempt to define a bright line test for their determination." *Id.* at 1287.

[¶34] In holding that a relocation by the custodial parent cannot, by itself, constitute a material change in circumstances sufficient to warrant a best interests analysis, the *Watt* opinion cited *Jaramillo*, 823 P.2d 299 as supporting authority. In that case, the New Mexico Supreme Court noted that "In New Mexico, the protection afforded the right to travel in the child-custody context has been explicitly recognized by both this Court and the court of appeals," and found that a parent's right to relocate should not be burdened by an adverse presumption against awarding custody to the relocating parent. *Id.* at 305. Importantly, however, *Watt* failed to recognize that the decision in *Jaramillo* proceeded immediately to state that "By the same token, we believe that the other parent's right to maintain his or her close association and frequent contact with the child should be equally free from any unfavorable presumption that would place him or her under the burden of showing that the proposed removal of the child would be contrary to the child's best interests." *Id.* at 306. The court further stated that "We think that such a presumption is potentially just as inimical to the child's best interests as the opposite presumption favoring the relocating parent," and noted that

> Both presumptions are subject to the following criticism leveled by the United States Supreme Court several years ago at "procedure by presumption":
>
> > Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it

24

> needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.
>
> *Stanley* [*v. Illinois*], 405 U.S. [645,] 656-57, 92 S.Ct. [1208,] 1215[, 31 L.Ed.2d 551 (1972)] (citations omitted).

*Jaramillo*, 823 P.2d at 307. Echoing this criticism, the court concluded that

> [W]e believe that allocating burdens and presumptions in this context does violence to *both* parents' rights, jeopardizes the true goal of determining what in fact *is* in the child's best interests, and substitutes procedural formalism for the admittedly difficult task of determining, on the *facts*, how best to accommodate the interests of all parties before the court, both parents and children.

*Id.* at 305 (emphasis in original).

[¶35] *Watt*'s reference to *Jaramillo* for support is especially confusing in light of *Jaramillo*'s conclusion that "In almost every case in which the change in circumstances is occasioned by one parent's proposed relocation, the proposed move will establish the substantiality and materiality of the change." *Id.* at 309. In a footnote accompanying this statement, the court noted that

> We do not hold that a proposed relocation constitutes a substantial and material change in circumstances as a matter of law, but it is difficult to imagine an instance in which a proposed relocation will not render an existing parenting plan or custody-and-visitation arrangement unworkable. As the court of appeals noted, "a distant relocation by one parent will inevitably trigger a change of circumstances -- the inability of the parties to implement their parenting agreement."

*Id.* at 309 n.9 (citation omitted).

[¶36] In *Tropea*, 665 N.E.2d 145, New York's highest court also rejected the use of presumptions in relocation cases:

> [I]t serves neither the interests of the children nor the ends of justice to view relocation cases through the prisms of presumptions and threshold tests that artificially skew the analysis in favor of one outcome or another.

> . . . [I]n all cases, the courts should be free to consider and give appropriate weight to all of the factors that may be relevant to the determination. These factors include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements.

*Id.*, 665 N.E.2d at 151. *See also*, Elrod, *supra* ¶ 12, at 356 (noting that "The clear trend in the United States seems to be to abandon presumptions and to adopt a 'best interests of the child' test that requires both parents to prove that their position is in the child's best interests.").

[¶37] The approach to modification of custody based on a relocation of a custodial parent taken in *Jaramillo* and echoed in *Tropea* was also adopted by the Supreme Court of Colorado in *In re Marriage of Ciesluk*, 113 P.3d 135. In that case, the court considered, and rejected, the approach taken in *Watt:*

> [The *Watt*] approach is no different in practice than the approach in [*In re Marriage of*] *Francis* [, 919 P.2d 776] that we now reject because it effects a presumption in favor of a custodial parent seeking to relocate. Furthermore, it is contrary to Colorado's preferred state policy emphasizing a fact-driven approach in relocation cases. *See* § 14-10-129(2)(c). Finally, it ignores the rights of the minority time parent. For these reasons, we decline to adopt this approach in Colorado.

*Ciesluk*, 113 P.3d at 143. The court also declined to adopt the Minnesota approach, as set forth in *LaChapelle v. Mitten (In re L.M.K.O.)*, 607 N.W.2d 151 (Minn. Ct. App. 2000), which "elevate[s] the child's welfare to a compelling state interest, thereby obviating the need to balance the parents' competing constitutional rights." *Ciesluk*, 113 P.3d at 143. The *Ciesluk* court reasoned:

> Though consideration of the parents' competing constitutional interests is important in relocation cases, the

26

conflict is not simply between the parents' needs and desires. *See Baures v. Lewis*, 167 N.J. 91, 770 A.2d 214, 229 (N.J. 2001). Rather, the issue in relocation cases is the extent to which the parents' needs and desires are intertwined with the child's best interests. *See id.* Thus, relocation disputes present courts with a unique challenge: to promote the best interests of the child while affording protection equally between a majority time parent's right to travel and a minority time parent's right to parent.

*Id.*, 113 P.3d at 142. *Watt*'s approach to the issue of relocation, elevating the right to travel over competing interests, has also been criticized in *Fredman v. Fredman*, 960 So.2d 52, 58 (Fla. Dist. Ct. App. 2d Dist. 2007) (noting that *Watt* "fails to take into consideration the other parent's fundamental right to parent") and *Braun v. Headley*, 750 A.2d 624, 632 (Md. Ct. Spec. App. 2000) (noting that most jurisdictions recognizing the role of the right to travel in relocation cases "hold that the right to travel is qualified, and must be subject to the state's compelling interest in protecting the best interests of the child," and that "Only one case, *Watt*, finds a 'best interests' analysis insufficient recognition of the parental right to travel, and holds that the threshold requirement that a material change of circumstances exists, which triggers the best interest analysis, cannot be established merely by proving relocation of the custodial parent.").

[¶38] On further examination of *Watt*, we find that its exclusive focus on the custodial parent's right to travel is not supported by our earlier precedent, and that the decision, in holding that a relocation, by itself, cannot constitute a material change in circumstances, unjustifiably elevates the custodial parent's right to travel over the competing interests of the minority time parent and the state's concern for the best interests of the child. Although a custodial parent's right to travel is entitled to protection, this interest must be weighed against the minority time parent's right to maintain a close relationship and frequent contact with his or her children. Further, because the goal in custody cases is to reach an arrangement that promotes the best interests of the children, the rights of both parents must be considered only to the extent that they are consistent with that goal. Ultimately, we agree with the conclusion reached in other jurisdictions that presumptions in favor of one parent or another are detrimental to the interests of all parties in cases involving modification of child custody based on relocation of a custodial parent.

[¶39] We note that our conclusion that a relocation may constitute a material change in circumstances does not conflict with the proper application of res judicata in determining whether modification of custody is warranted. Clearly, a move by a custodial parent, especially when the distance from the remaining parent is significant, may create "new issues framed by facts differing from those existing when the original decree was entered," which preclude the application of res judicata. These new facts may include a change in the ability of the parties to maintain the existing parenting agreement, a change

in the ability of the children to maintain a close relationship with the remaining parent, factors affecting quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location. On this point, we agree with the Vermont Supreme Court, which has stated that "when childrearing and its concomitant decision-making are shared, relocation to a remote location by one parent requires at the very least a reassessment of the custodial arrangement and, because of the practicalities involved in shared parenting, will often necessitate a change in custody." *Hoover v. Hoover*, 764 A.2d 1192, 1194 (Vt. 2000).

[¶40] In summary, we conclude that *Watt*'s prohibition against considering relocation as a factor contributing to a material change in circumstances does not properly account for the minority time parent's right to associate with his or her family, the child's right to familial association, or the state's "paramount concern" for promoting the best interests of the children. With this decision, we explicitly recognize that a relocation by the primary physical custodian, as well as "factors that are derivative of the relocation" – including "the inherent difficulties that the increase in geographical distance between parents imposes" – may constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children. To the extent this conflicts with this Court's holding in *Watt*, we hereby overrule *Watt*.

[¶41] Further, based on the facts of the present case, we find that Mother's relocation to Virginia, over 2,000 miles away from Father, constitutes a material change in circumstances. As we have previously noted, however, "a material change of circumstance does not automatically equate with a change in custody." *JRS*, ¶ 13, 90 P.3d at 724. We note that the district court was able to consider a great deal of evidence bearing on the best interests of the children in addressing the issue of whether there had been a material change in circumstances. Our concern is that the district court viewed this evidence through the prism of the presumption in favor of the relocating, custodial parent that we created in *Watt*. In light of the district court's emphasis on this presumption, which no longer applies, we are unable to determine how the absence of such a presumption would have impacted the district court's decision. Accordingly, we remand for further consideration of this issue with instructions that the district court consider all relevant facts and circumstances in determining a proper custodial arrangement that is in the best interests of the children. Because Father is the party seeking the modification of the custodial arrangement, he has the evidentiary burden of establishing that a modification of custody is in the best interests of the children.[3] We must emphasize, by this decision, we are not suggesting a particular result. We are only

---

[3] Although some courts have determined that both parents share equally the burden of demonstrating how a child's best interests will be served in the relocation, we do not adopt that approach in this case. *See, e.g., In re Marriage of Ciesluk*, 113 P.3d at 147; *Jaramillo*, 823 P.2d at 308.

requiring that the determination be made by application of the correct legal standard.

[¶42]   In light of our decision, we need not address Father's third issue pertaining to visitation.  We reverse and remand for further proceedings consistent with this opinion.